62842, 62843. BINNS v. METROPOLITAN ATLANTA RAPID TRANSIT AUTHORITY; and vice versa.

CARLEY, Judge.

Binns, plaintiff below, filed suit against the Metropolitan Atlanta Rapid Transit Authority (MARTA) seeking compensatory damages for personal injuries and, in addition, punitive damages pursuant to OCGA § 33-34-6 (Code Ann. § 56-3406b). The jury returned a verdict awarding Binns both compensatory and punitive damages. In Case Number 62842, Binns appeals from the grant of MARTA's motion for judgment n.o.v. as to the award of punitive damages. In Case Number 62843, MARTA enumerates as error certain evidentiary rulings by the trial court and further asserts that it was error to submit the issue of compensatory damages to the jury.

*Case Number 62842*

1. In support of the grant of its motion for judgment n.o.v., MARTA relies upon the holding in *City of Columbus v. Myszka,* 246 Ga. 571, 573 (272 SE2d 302) (1980) "that absent statutory authority, a municipality cannot be held liable for punitive damages. [Cits.]"

In the first instance, it is questionable whether MARTA, which is not a municipality, is even entitled to invoke the benefit of the holding in *Myszka.* However, even equating MARTA to a municipality for the sake of argument, it is clear that the "statutory authority" required by *Myszka* for the imposition of punitive damages exists as far as MARTA is concerned. Section 22 of the legislation which created MARTA (Ga. Laws 1965, pp. 2243, 2275) is a clear, complete and absolute waiver of governmental immunity from tort liability. That section provides in its entirety as follows: "Tort Liability; Insurance. The Authority shall not enjoy governmental immunity from tort liability, but shall be liable therefor *as any private corporation* except that no execution shall be levied on any property of the Authority prior to ninety (90) days from the date of a

final judgment against the Authority. The Authority shall contract for adequate insurance, indemnification or similar protection against any loss, liability or other risk, hazard or responsibility to which it may be exposed or which it may accept on account of its property, or operations." (Emphasis supplied.) This is an unequivocal pronouncement that MARTA is liable in tort to the extent that a private corporation would be. Corporations in Georgia are liable for exemplary damages. *Gasway v. Atlanta & West Point R. Co.,* 58 Ga. 216 (2) (1877).

Moveover, the punitive damages in this case were not imposed against MARTA in its capacity as a tortfeasor but rather as a self-insurer under our no-fault law. The statutory authorization for such damages is OCGA § 33-34-6 (c) (Code Ann. § 56-3406b) and there is nothing to demonstrate that MARTA, as a self-insurer, is exempt from that statutory provision. Accordingly, we find that governmental immunity was not a proper predicate for the grant of MARTA's motion for judgment n.o.v.

2. "[I]n the event that an insurer fails or refuses to pay a person the benefits which such person is entitled to under this Chapter within 60 days after proper proof of loss has been filed, the person may bring an action to recover such benefits, and if the insurer fails to prove that its failure or refusal to pay such benefits was in good faith, the insurer shall be subject to punitive damage." OCGA § 33-34-6 (c) (Code Ann. § 56-3406b).

In answer to a certified question in the instant case, the Supreme Court has held that the standard of review of a jury award under OCGA § 33-34-6 (Code Ann. § 56-3406b) differs from that applicable to the review of a jury award under OCGA § 33-4-6 (Code Ann. § 56-3406b) and enunciated in *Colonial Life &c. Ins. Co. v. McClain,* 243 Ga. 263 (253 SE2d 745) (1979). "Section 33-34-6 [Code Ann. § 56-3406b] authorizes an award of a penalty, attorney fees, and punitive damages in certain cases where, following reasonable proof of loss by the insured, the insurer refuses to pay and such denial of benefits is not in 'good faith.' The burden of proving good faith is on the insurer. [Cit.] Good faith in this context requires a showing of reasonable or probable cause for *not paying the claim on time.* [Cit.] The question of the insurer's good faith (or lack thereof) is one of fact for the jury, and the jury's determination on this issue should be upheld on appeal if there is any evidence to support it. [Cits.] A jury award of punitive damages for wrongful refusal to pay a claim is thus entitled to great weight on appeal and should be disturbed only if the evidence at trial does not support an inference of bad faith on the insurer's part. [Cits.] Application of an 'any evidence' standard of review to § 33-34-6 [Code Ann. § 56-3406b] jury awards is consistent

with the policy, previously recognized by this court, of *encouraging prompt payment of no-fault insurance claims.* [Cit.]" (Emphasis supplied.) *Binns v. MARTA,* 250 Ga. 847, 848 (301 SE2d 877) (1983).

Accordingly, unlike OCGA § 33-4-6 (Code Ann. § 56-3406b), an appellate determination that the insurer's *defense at trial* raised "a reasonable question of law or a reasonable issue of fact though not accepted by the trial court or jury" (*Colonial Life Ins. Co. v. McClain,* supra at 265) is not dispositive in the review of an award under OCGA § 33-34-6 (Code Ann. § 56-3406b). In an appellate review of a jury award under OCGA § 33-34-6 (Code Ann. § 56-3406b), "the insurer has not met its burden of proof under [that statute] as a matter of law and the insured is not precluded, as a matter of law, from recovering an award of penalties [thereunder] where there is *other evidence of the circumstances surrounding the insurer's pre-trial refusal to pay when due . . .*" (Emphasis supplied.) *Binns v. MARTA,* supra at 848. While the above enunciated "any evidence" rule is applicable in the context of an appellate review of a jury award under OCGA § 33-34-6 (Code Ann. § 56-3406b), the same standard would be applicable in the context of a trial court ruling upon an insurer's motion for judgment n.o.v. as to such an award. See generally *Church's Fried Chicken v. Lewis,* 150 Ga. App. 154, 158 (1C) (256 SE2d 916) (1979).

With regard to an insurer's "timely" payment of no-fault benefits, OCGA § 33-34-6 (b) (Code Ann. § 56-3406b) states in part that no-fault benefits "are overdue if not paid within 30 days after the insurer receives reasonable proof of the fact and amount of loss sustained. If reasonable proof is not supplied as to the entire claim, the amount supported by reasonable proof is overdue if not paid within 30 days after proof is received by the insurer." As noted previously, OCGA § 33-34-6 (c) (Code Ann. § 56-3406b) provides that, in addition to all other penalties, punitive damages may be imposed if the insurer's failure or refusal to pay benefits "within 60 days after proper proof of loss has been filed" was not in good faith. "[T]he date on which an insurer should be deemed to have received 'reasonable proof of the fact and the amount of loss sustained' by its insured is that date upon which the insurer receives sufficient proof *from the insured* to enable the insurer to verify or disprove, through the exercise of reasonable diligence, the basic components of the insured's claim." *Jones v. State Farm &c. Ins. Co.,* 156 Ga. App. 230, 235 (274 SE2d 623) (1980) (emphasis in original). Turning to the issue of whether, under the above cited legal principles there was any evidence to support the imposition of punitive damages in the instant case, we find that the following findings were authorized: Binns satisfied his obligation under the statute to submit reasonable proof

of at least a portion of his claim. Despite this, MARTA's claims adjuster refused to pay *any* no-fault benefits whatsoever to Binns. The basis for such refusal was not a good faith, timely and diligent objective investigation of Binns' no-fault claim. Instead, the basis for the refusal was the adjuster's somewhat subjectively biased or at least less-than-objective view of Binns' claim and MARTA's underlying no-fault obligation regarding that claim. Under these facts, it cannot be said that there is no evidence to "support an inference of bad faith on the insurer's part. [Cit.]" *Binns v. MARTA,* supra at 848. See also *National General Ins. Co. v. Meeks,* 145 Ga. App. 830, 834 (4) (244 SE2d 920) (1978). The trial court erred in granting MARTA's motion for judgment n.o.v. as to the jury's verdict awarding punitive damages.

### Case Number 62843

3. As cross-appellant, MARTA asserts that the trial court erred in submitting the issue of compensatory damages to the jury. Although Binns was disabled by a head injury incurred while serving in the army, there was evidence that he was dragged by a MARTA bus, that his head struck the pavement and that he received treatment for this new injury. It is well established that recovery may be had for aggravation of a pre-existing condition or disease. See *Whatley v. Henry,* 65 Ga. App. 668, 669 (16 SE2d 214) (1941).

4. MARTA also asserts that certain physicians and hospital bills were erroneously admitted into evidence. Several of MARTA's objections were, in essence, grounded upon Binns' failure to comply with the requirements of OCGA § 24-7-9 (Code Ann. § 38-706.1). These objections were not erroneously overruled. See generally *Atlanta Transit Systems v. Smith,* 141 Ga. App. 87 (1) (232 SE2d 580) (1977). Assuming without deciding that MARTA had a valid "best evidence" objection to some of the bills, it appears that any error in the admission of those bills into evidence over that objection was harmless. See *Ayers v. Carter,* 159 Ga. App. 680, 682 (4) (285 SE2d 55) (1981). It appears that MARTA's other asserted grounds for excluding the bills were apparently waived. See *Cawthon v. State,* 119 Ga. 395, 396 (7) (46 SE 897) (1903).

*Judgment in Case Number 62842 reversed; judgment in Case Number 62843 affirmed. Shulman, C. J., Quillian, P. J., McMurray, P. J., Banke, Birdsong, Sognier and Pope, JJ., concur. Deen, P. J., dissents.*

DECIDED SEPTEMBER 8, 1983 —
REHEARING DENIED OCTOBER 4, 1983 —

*Thomas Henry Nickerson,* for appellant.

*Frank A. Lightmas, Jr., Terrence Lee Croft,* for appellee.

DEEN, Presiding Judge, dissenting.

I must respectfully dissent to the majority holding in Division 1 of case number 62842. In *City of Columbus v. Myszka,* 246 Ga. 571, 573 (272 SE2d 302) (1980), the court adopted the rule: ". . . absent statutory authority, a municipality cannot be held liable for punitive damages." The question then remains as to whether this rule applies to MARTA. The Georgia Constitution, Art. 9, Sec. 4, Par. 2, formerly Code Ann. § 2-5102 (10), authorizes cities to operate bus systems, and the Metropolitan Atlanta Rapid Transit Authority was created by the General Assembly as Ga. Laws 1965, p. 2243 et seq. Under § 4 (p. 2246), MARTA was created as a joint public instrumentality of the City of Atlanta and the five surrounding counties. Section 8 (p. 2252) provides: "The Authority shall have all powers necessary or convenient to accomplish the aforesaid purposes including . . . (a) The powers, privileges and immunities authorized by law for private corporations and for instrumentalities of government. The Authority may sue or be sued in its corporate name but no execution shall be levied on any property of the Authority prior to ninety (90) days from the date of a final judgment against the Authority . . ." Section 22 (p. 2275) waives governmental immunity from tort liability and requires the Authority to obtain adequate insurance, indemnification or similar protection against loss. Thus, MARTA's immunity, if any, is waived in §§ 8 (a) and 22. *Glover v. Donaldson,* 243 Ga. 479 (254 SE2d 857) (1979).

Appellee argues that MARTA is not clothed in any form of sovereign immunity under *City Council of Augusta v. Lee,* 153 Ga. App. 94 (264 SE2d 683) (1980) and *Columbus, Ga. v. Hadley,* 130 Ga. App. 599 (203 SE2d 872) (1974) wherein this court held that the city-operated transit systems were a ministerial rather than a governmental function of the two cities. As noted in the *Columbus, Ga.* case, there is no satisfactory test for distinguishing between governmental and ministerial functions and when the court was "[c]onfronted with this situation and in the absence of any statutory declaration of governmental immunity or classifying it as a governmental function, the best recourse is to determine whether any given municipal activity of this kind is protected by the shield of governmental immunity as found in cases which actually classify that particular activity." Id. at 600. In the instant case, we have quite a different situation. As stated in *Glover v. Donaldson,* supra, the existing legislation provides for sovereign immunity and its waiver in §§ 8 (a) and 22 and § 3 (p. 2245) provides: "The territory comprising

the counties of Fulton, DeKalb, Cobb, Clayton and Gwinnett, including the City of Atlanta, has developed and continues to develop, phenomenally into a metropolitan area with a common interest in the cultural, social and economic well-being of the people therein and the development of the educational, commercial and industrial resources thereof. There exists in this metropolitan area serious traffic conditions and congestions and serious mass transportation problems which impede, and will increasingly impede, the development of these common interests toward their fullest potential. Concerted governmental action is needed to alleviate such traffic conditions and congestion, supply deficiencies in mass transportation, coordinate and balance the transportation facilities operating therein, and otherwise provide a sounder basis for the development of traffic patterns and control. The development of a rapid transit system through a joint instrumentality of the local governments within the metropolitan area is a reasonable approach to the aforesaid needs and problems. The cultural, social and economic well-being of the people in the metropolitan area and the development of the educational, commercial, and industrial resources thereof are matters of public interest and concern throughout the State. Accordingly, it is the public policy of this State, as a matter of public health, safety, convenience and welfare, to promote the establishment of such a joint instrumentality, encourage participation therein by the local governments involved, facilitate the accomplishment of its purposes and bring about solutions for the aforesaid needs and problems." As this section envisions the creation of the public transit system as ". . . an act for the common good of the general public without special corporate benefit or pecuniary profit to the municipality or its citizens, the Act is generally classified as governmental . . ." Charles S. Rhyne, *The Law of Local Government Operations* (1980), § 32.2, p. 1043.

As the enabling legislation indicates that MARTA serves a governmental function, it is cloaked in sovereign immunity that is waived only to the extent provided in the enabling legislation and as no statutory provision expressly providing for the award of punitive damages has been included in the Act, they cannot be awarded. *City of Columbus v. Myszka,* supra. OCGA § 33-34-6 (c) (Code Ann. § 56-3406b) which permits punitive damages to be awarded for bad faith refusal to pay a claim under Georgia no-fault insurance law is inapplicable as there is no implied waiver of sovereign immunity.

Accordingly I would affirm the trial court's grant of a judgment notwithstanding the verdict in favor of MARTA.