74249. CANAL INSURANCE COMPANY v. HENDERSON.
(360 SE2d 435)

BEASLEY, Judge.

Canal was the carrier of PIP coverage on the automobile driven by Henderson. It appeals from the judgment based on a jury verdict for $10,000, contending that it was entitled as a matter of law to prevail on the issues of statutory penalty and attorney fees (OCGA § 33-34-6 (b)) and punitive damages (OCGA § 33-34-6 (c)). Its motion for directed verdict had been denied and these issues submitted to the jury, all of which Canal enumerates as error.

Seventeen-year-old Henderson was injured when the car he was driving was rear-ended by another car on April 28, 1985. Henderson's car was damaged in that the rear view mirror was knocked off, the license plate was bent, and after the car was driven to Henderson's home the universal joint fell out, necessitating the drive shaft's replacement. Although Henderson reported no physical injury to the investigating officer at the time of the collision, his father took him to the emergency room later that day. There he was examined and x-rayed. The treating physician diagnosed muscle spasms of the neck based partly on the objective x-ray finding of a straightened lordotic curve, prescribed muscle relaxers and pain pills, and advised that the injury would take some weeks to heal.

Henderson's lower back began to hurt about one week after the

accident and continued to hurt on and off thereafter. His work emptying garbage cans at a restaurant brought pain following the collision. Henderson obtained no further medical care until August 20, 1985, when he was taken to chiropractor Dr. Overstreet. Repeated treatment from Dr. Overstreet through November totalled $1,586. It is this treatment which Canal contested.

Canal was sent initial notice of the claim by Henderson's attorney on September 6, 1985, along with a copy of Dr. Overstreet's initial bill. Plaintiff relies, however, on the PIP form which was sent on November 25 and received by Canal about December 2, as its notice for purposes of OCGA § 33-34-6. This form included with it copies of the hospital bill, radiologist's bill, and pharmacy bill for the initial treatment. By this time Canal had also received copies of all of Dr. Overstreet's bills, reflecting the last treatment administered on November 8. Upon receipt of the September notice, Canal retained Mobley, an independent adjuster, to investigate the claim. He testified that he was suspicious of the entire claim from the beginning because of the time lapse between the accident and the chiropractic care, and because he thought that the claim was being unnecessarily inflated by chiropractic visits. He also suspected, although there was no proof of it, that Henderson had been sent to the chiropractor by an attorney to build his claim.

After interviewing Henderson at his attorney's office in October, Mobley arranged an independent medical exam by an orthopedist. It was conducted on November 4, 1985, and the orthopedist issued a report to Canal that same day stating: ". . . I feel that this young man may well have had an acute flexion/extension injury of his neck with some temporary residual, but I feel all of this has now cleared." The doctor also testified by deposition that he was not familiar with the practice of spinal manipulation, but did express his opinion that manipulating this type of injury was not advisable. He also testified that he did not feel that the lower back pain was attributable to the accident.

1. The sole issue is whether Canal had proved as a matter of law that its failure or refusal to pay the chiropractic bills and late payment of the other bills was in good faith, that is, that its reasons were legally justified so as to shield it from the penalty, attorney fees, and punitive damages sought pursuant to OCGA § 33-34-6. A directed verdict is appropriate only if there is no conflict in the evidence as to any material issue and the evidence, with all reasonable deductions therefrom, shall demand a particular verdict. OCGA § 9-11-50 (a); *Marriott Corp. v. American Academy of Psychotherapists*, 157 Ga. App. 497, 498 (1) (277 SE2d 785) (1981).

Upon making the motion, defendant's counsel referred the court to its claim file, which had been placed in evidence by stipulation.

That file contained the PIP form submitted by Henderson and received by Mobley on behalf of Canal by at least December 2, along with the bills incurred on the April 28 emergency room visit. The claim file reflects that the check in payment of these bills was not forwarded to Henderson's attorney by Mobley until January 9, 1986, beyond the thirty days mandated by OCGA § 33-34-6 (b). While Canal contended that it had not received "reasonable proof" that the medical treatment was necessary and resulted from the accident (in fact, Mobley testified at the trial that he *still* was of the opinion that the emergency room visit was unnecessary), this is not the standard. "[T]he date on which an insurer should be deemed to have received 'reasonable proof of the fact and the amount of loss sustained' by its insured is that date upon which the insurer receives sufficient proof *from the insured* to enable the insurer to verify or disprove, through the exercise of reasonable diligence, the basic components of the insured's claim." (Emphasis in original.) *Jones v. State Farm Mut. Auto. Ins.*, 156 Ga. App. 230, 235 (274 SE2d 623) (1980), overruled on other grounds, *Atlanta Cas. Co. v. Flewellen*, 164 Ga. App. 885 (300 SE2d 166) (1982). Copies of medical bills are such proof. *Jones*, supra.

This untimely payment alone was reason for the court's denial of the motion for directed verdict as to the 25 percent penalty and attorney fees, since an insured is entitled to penalties and damages under OCGA § 33-34-6 (b) and (c) based solely on a late payment. *Lawson v. State Farm Mut. Auto. Ins. Co.*, 256 Ga. 285 (347 SE2d 565) (1986); *Atlanta Cas. Co. v. Jones*, 247 Ga. 238, 241 (4) (275 SE2d 328) (1981). The burden of showing good faith for a refusal to timely pay is on the insurer. *Binns v. MARTA*, 250 Ga. 847 (301 SE2d 877) (1983). No reason for the untimely payment of the April 28 bills was put forward, except for Mobley's belief that no treatment was necessary. In ruling on the trial court's denial of the motions for directed verdict, if there is *any evidence* in the record before that court which supports that denial, we are to uphold it. *Hartford Fire Ins. Co. v. Rowland*, 181 Ga. App. 213, 216 (2) (351 SE2d 650) (1986). *Binns v. MARTA*, 168 Ga. App. 261, 263 (2) (308 SE2d 674) (1983). Here, the merely subjective and unsupported belief of Mobley that Henderson was entitled to no payment is that evidence. See *Binns*, supra at 264.

The denial of the motions for directed verdict as to 25 percent penalty and attorney fees was not error.

In considering whether Canal was entitled to a directed verdict on the question of punitive damages under OCGA § 33-34-6 (c), only the failure to pay the chiropractic bill will support the court's ruling, since the emergency room bills were paid within sixty days. We are bound by the any evidence standard, as was the trial court at the time the issue was presented to it. *Binns v. MARTA*, supra at 263. The

insurer had received the "reasonable proof" or, as used in OCGA § 33-34-6 (c), "proper proof" of loss from the insured at least by November 25. Prior to that, the insured and his father had been interviewed by the adjuster and Henderson had undergone the independent medical exam required by Canal. The adjuster had also examined the automobile.

The factors relied on by Canal in support of its motion for directed verdict were that the claim had not been reported to it until four months after the accident, there were no injuries reported in the police report, and there was no substantial damage to the rear of the Henderson vehicle.

In contrast to these factors were the following acts and omissions of adjuster Mobley: (1) he refused to examine the drive shaft when he examined the car, even though it was there and available; (2) he refused to look under the bumper and examine the piece of steel welded there by Mr. Henderson to strengthen it; (3) he never spoke to Dr. Overstreet; (4) he never spoke to the man who hit Henderson or the police officer who investigated the accident; (5) even after receiving the bills for the emergency room visit the night of the accident, he was of the opinion that this visit was "unnecessary"; (6) not until December 27, over 30 days after receiving the proof of loss, did he request the review of Dr. Overstreet's bills and treatment from Chiropractic Consultants.

We can reverse the trial court's ruling regarding the directed verdict "*only* if the evidence at trial does not support an inference of bad faith on the insurer's part," *Hartford Fire Ins. Co. v. Rowland*, 181 Ga. App. 213, 216 (2) (351 SE2d 650) (1986), which is not the case here. This is especially true because Canal's own doctor did not dispute that the initial injury occurred, and the chiropractic consultant verified that at least some chiropractic care was warranted. Compare *Government Employees Ins. Co. v. Presley*, 174 Ga. App. 562, 565 (1) (330 SE2d 779) (1985).

2. Henderson has also filed a motion for damages for frivolous appeal and a motion to remand to determine additional attorney fees. These motions are denied.

*Judgment affirmed. McMurray, P. J., and Sognier, J., concur.*

DECIDED JULY 14, 1987 —
REHEARING DENIED JULY 30, 1987 —

*Harry W. Bassler, Candler Crim, Jr.*, for appellant.
*David N. Rainwater*, for appellee.