**Ray SHIPES, Plaintiff,**

v.

**The HANOVER INSURANCE CO., Defendant.**

**Civ. A. No. 87–69–3–MAC (WDO).**

United States District Court, M.D. Georgia, Macon Division.

Sept. 30, 1987.

Burton Lee, Elizabeth R. Francisco, Macon, Ga., for plaintiff.

Cubbedge Snow, III, Macon, Ga., for defendant.

## ORDER

OWENS, Chief Judge.

This action is before the court on cross motions for summary judgment. The issue, the proper calculation of benefits due an injured employee pursuant to O.C.G.A. § 33–34–8(c), is one that Georgia courts have not previously addressed. While the parties, plaintiff Ray Shipes and defendant Hanover Insurance Company, disagree as to the proper calculation of these benefits, they agree that the construction of the statute is a question of law and a matter properly determinable by this court. The nature of the dispute and counsel's thorough briefing of the question negate any need for an oral hearing on the motions.

The relevant facts are not in dispute. Plaintiff was injured on October 10, 1985, while in the course of and in the scope of his employment. Plaintiff was driving a company vehicle at the time of the incident. Thus, plaintiff was eligible under separate policies of insurance for both workers' compensation benefits and personal injury protection benefits (PIP). Defendant Hanover Insurance Company carried both policies for plaintiff's employer, Macon Mine and Mill.

Based upon plaintiff's average weekly wages of $224.67, defendant Hanover paid plaintiff $149.78 in weekly workers' compensation benefits, leaving lost wages of $74.89. These payments continued until November 24, 1986. Relying upon O.C.G.A. §§ 33–34–4, 33–34–5 and 33–34–8, the no-fault policy and Georgia case law, defendant then computed 85% of plaintiff's remaining lost earnings and paid weekly to plaintiff an additional $63.66. The sum of these payments ($213.44) resulted in a weekly shortfall for plaintiff of $11.23 for the fifty-eight weeks plaintiff received

workers' compensation benefits. That shortfall prompted this lawsuit.[1]

### Discussion

Defendant contends that benefits recoverable under either basic PIP or optional PIP, as those coverages are defined in O.C.G.A. §§ 33–34–4(a)(2)(B) and 33–34–5(a)(1)(B) respectively, may not exceed 85% of one's lost income or wages. Defendant further asserts that the benefits recoverable under O.C.G.A. § 33–34–8(c), benefits recoverable by an injured employee when his employer carries both workers' compensation insurance and no-fault insurance, likewise are limited to 85% of either (a) employee's salary, or (b) "lost wages," lost wages defined as the difference between the employee's weekly salary and the amount paid to the employee under workers' compensation. In support of its interpretation, Hanover cites *Brown v. Boston Old Colony Insurance Co.*, 247 Ga. 287, 275 S.E.2d 651 (1981), and *Atlanta Casualty Co. v. Sharpton*, 158 Ga.App. 758, 282 S.E.2d 214 (1981).

In *Brown*, the court determined that section 33–34–8, as amended in 1979, clearly permits an employee to receive payments from both workers' compensation and no-fault policies provided by his employer. The court said, however, that no-fault benefits "may be reduced by the amount paid under workers' compensation where the benefits payable under the chapter are provided by an employer obligated to provide workers' compensation benefits." *Brown*, 247 Ga. at 288, 275 S.E.2d at 652. The court did not address the manner of ascertaining the total benefits payable, but merely recited in the facts that the payments rendered under the no-fault policy represented 85% of the difference between the employee's weekly wages and the amount paid under workers' compensation.

In *Sharpton*, the issue before the court was whether an employee receiving from his employer's insurance carrier both workers' compensation benefits and payments under a no-fault policy was precluded from also collecting benefits under his (the employee's) no-fault policy. The court held such recovery permissible. The court did not address the proper method of apportioning payments under the workers' compensation and no-fault policies purchased by the employer. Instead, the court merely stated that the no-fault payments "represented the difference between 85% of his weekly wage ($180) and the workers' compensation payment." *Sharpton*, 158 Ga. App. at 758, 282 S.E.2d at 215.

As the above discussion demonstrates, defendant's reliance upon these two cases is misplaced. Neither case addressed the issue of the proper calculation of benefits payable pursuant to O.C.G.A. § 33–34–8(c). In both cases, the courts merely recited the benefits paid and proceeded to consider other issues.

To make certain of a proper interpretation, this court has carefully scrutinized section 33–34–8(c) and has considered the opinion of Georgia's Attorney General. *See* 1980 Op. Att'y. Gen. No. 80–61.[2] The plain language of the statute prescribes the method of correlating workers' compensation benefits and no-fault benefits. The prefatory clause explains that the statute is applicable "[i]n those instances where the benefits payable under this chapter have been provided for at the expense of an employer who is also obligated by statute to provide compensation for its employees under any workers' compensation law...." Macon Mine and Mill is such an employer,

---

1. Jurisdiction is founded upon 28 U.S.C. § 1332. The parties are of diverse citizenship, and plaintiff seeks damages, including penalties and punitive damages, in excess of $10,000.00.

2. On page 131, the attorney general concludes that "any 'insured injured' employee may collect no-fault lost earnings benefits paid for by his employer up to the limits of his employer's no-fault insurance or self-insurance plan to the extent that the lost earnings benefits which he is entitled to receive from his employer pursuant to the workers' compensation laws plus the limits of his employer's no-fault policy or self insurance plan are less than or equal to his actual earnings. In the event the sum of the workers' compensation benefits to which he is entitled and the limits of his employer's no-fault policy or self insurance plan exceed the employee's actual lost earnings, the no-fault benefits recoverable will be reduced."

and, in fact, holds both workers' compensation and no-fault policies issued by defendant Hanover.

The statute next identifies the no-fault benefits payable to an injured employee as "the benefits payable without regard to fault under this chapter for loss of income or earnings incurred during disability as a result of a motor vehicle accident...." Though the amount of these benefits may be increased by the applicable policy, the policy must compensate an injured person, up to an aggregate minimum limit of $5,000.00, for at least "[e]ighty-five percent of the loss of income or earnings during disability with a maximum benefit of $200.00 per week." O.C.G.A. § 33–34–4(a)(2)(B) (1987). The policy purchased by Macon Mine and Mill provided for the minimum 85% coverage with an increased aggregate benefit limit of $50,-000.00. Thus, under the no-fault policy alone, defendant Hanover could have been required to pay 85% of plaintiff Shipes' loss of income or earnings, up to the maximum benefit of $200.00 per week. Applying the formula to plaintiff's wages, defendant could have been liable for no-fault benefits amounting to $190.97 weekly ($224.67 X .85 = $190.97).

However, section 33–34–8(c) continues, stating that the no-fault benefits "shall be reduced or eliminated to the extent that the insured injured person is entitled to receive compensation for such loss of income or earnings under any workers' compensation law...." *See also Brown,* 247 Ga. at 288, 275 S.E.2d at 652 (though no fault benefits generally not reducible, legislature clearly intended that they may be reduced by the amount paid under workers' compensation). Following the literal dictates of the statute, the no-fault benefits of $190.97 would be reduced by the workers' compensation benefits of $149.78, resulting in a weekly payment under no-fault of $41.19 ($190.97 − $149.78 = $41.19). This odd result, that the employee will never receive more than 85% of his lost earnings, would create both a windfall for the insurance company and a shortfall for the injured person. Further, this result would deprive the employer of services for which he has paid full premiums. Macon Mine and Mill has purchased two policies and has paid two premiums, yet the two policies provide no more coverage than would the single no-fault policy. Such an anomalous result was neither intended nor expressed by the legislature. Indeed, the remainder of the statute makes clear that though the statute was designed to prevent double recovery, it was never intended to preclude, except within certain limits, the recovery of an employee's actual lost earnings.

The remaining portion of section 33–34–8(c) reads as follows:

[I]n no event shall the aggregate amount of benefits which the insured injured person is entitled to receive as compensation for the loss of income or earnings during disability under this chapter without regard to fault and under any workers' compensation law be less than an amount equal to the person's loss of income or earnings during disability or an amount which is equal to an amount the person is entitled to receive as compensation for the loss under any workers' compensation law plus the limits of the coverage under any applicable policy of motor vehicle insurance or under any program of self-insurance providing such benefits, whichever is less.

With this language, the legislature qualified the command to reduce no fault benefits and established a limit beneath which the amount of recoverable benefits cannot fall. That stautory limit is the lesser of either (1) the employee's average weekly income or earnings, or (2) a sum composed of workers' compensation benefits plus the limits of the coverage available under the no-fault policy. In effect, the statute requires that an injured employee's benefits be determined by adding to the benefits available under workers' compensation the benefits available under no-fault, until either the employee has been fully compensated for lost earnings or the no-fault policy limits have been reached. In the instant case, plaintiff Shipes should receive the lesser of either (1) his average weekly income ($224.67), or (2) workers' compensation ($149.78) plus the available no-fault

benefits ($190.97), such benefits amounting to $340.75.

In summary, this court finds that section 33–34–8(c) derogates from the general rule that benefits payable under the no-fault chapter are not reducible. The court further determines that the statute clearly expresses the intent of the legislature to preclude double recovery of benefits beyond an insured injured employee's lost income or earnings by permitting a reduction in no-fault benefits up to the amount an employee is receiving from a workers' compensation policy. The statute further provides that any such reduction may not decrease the aggregate recovery of benefits below the lesser of two specified amounts. The applicable standard for recovery in the case before this court is plaintiff Shipes' lost income or earnings. Therefore, defendant Hanover was obligated to pay to plaintiff Shipes an amount representing the full difference between plaintiff's average weekly wages of $224.67 and the benefits paid under workers' compensation. In that defendant's previous fifty-eight payments were inadequate in the amount of $11.23 weekly, defendant Hanover is hereby ORDERED to remit to plaintiff $651.34, with the statutory interest rate on that amount of 7% per annum. *See* O.C.G.A. § 7–4–2 (1987).

As evidenced by the above discussion, plaintiff's motion for partial summary judgment on the issue of the calculation of damages under O.C.G.A. § 33–34–8(c) is hereby GRANTED. Defendant's cross motion for summary judgment is DENIED.