Ray SHIPES, Plaintiff–Appellant,

v.

The HANOVER INSURANCE COMPANY, Defendant–Appellee.

Ray SHIPES, Plaintiff–Appellee,

v.

HANOVER INSURANCE COMPANY, Defendant–Appellant.

Nos. 88–8546, 88–8582.

United States Court of Appeals, Eleventh Circuit.

Sept. 29, 1989.

Elizabeth R. Francisco, Sinnreich & Francisco, Burton Lee, Dozier, Atkin & Lee, Macon, Ga., for plaintiff-appellant.

George C. Grant, Cubbedge Snow, III, Martin, Snow, Grant & Napier, Macon, Ga., for defendant-appellee.

Before RONEY, Chief Judge, JOHNSON, Circuit Judge, and YOUNG *, Senior District Judge.

JOHNSON, Circuit Judge:

This case consolidates two appeals, by the Hanover Insurance Co. ("Hanover") and Ray Shipes, respectively, from the district court's order (1) entering summary judgment for Shipes on his claim against Hanover for certain no-fault motor vehicle personal injury protection ("PIP") insurance benefits, and (2) entering summary judgment for Hanover on Shipes's claim for additional damages against Hanover based on Hanover's alleged lack of good faith in denying the disputed benefits. We affirm on both issues.

## I. STATEMENT OF THE CASE

Shipes, an employee of Macon Mine and Mill Co. ("Macon"), was injured while driving a company vehicle on October 10, 1985, resulting in the loss of his weekly wages of $224.67. In addition to workers' compensation benefits, Macon provided PIP benefits through a policy with Hanover. Following the accident, Shipes received $149.78 in weekly workers' compensation, leaving weekly lost wages of $74.89. Of that amount, Hanover paid Shipes 85%, or $63.66, in PIP benefits. This left Shipes with an overall weekly shortfall of $11.23 in lost wages. On April 17, 1986, Shipes's attorney, invoking his interpretation of O.C.G.A. § 33–34–8(c) (1982), wrote Hanover's claims representative, Emita Hyman, to demand that Shipes's benefits be adjusted upward by $11.23 weekly, so as to compensate him for the entire amount of lost wages. Hyman responded on May 1, 1986, asserting the correctness of Hanover's coordination of Shipes's benefits based on Hanover's interpretation of section 33–34–8(c). Shipes's benefits, as calculated by Hanover, continued until November 24, 1986, for a total of 58 weeks. The only dispute between the parties concerns the proper coordination, under Georgia law, of Shipes's workers' compensation and PIP benefits, and Hanover's good faith or lack thereof in following its chosen coordination of benefits.

Shipes brought suit against Hanover in Georgia state court, and Hanover removed to the district court on diversity grounds.

* Honorable George C. Young, Senior U.S. District Judge for the Middle District of Florida, sitting by designation.

On September 30, 1987, the district court granted summary judgment for Shipes on the benefits issue. *Shipes v. Hanover Ins. Co.,* 670 F.Supp. 354 (M.D.Ga.1987).[1] On February 12, 1988, Shipes filed an amended complaint seeking to recast his suit as a class action and to add claims under the federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.A. §§ 1961–1968 ("RICO"). Hanover responded on March 14, 1988 with a motion for summary judgment on the good faith issue, along with objections to discovery sought by Shipes and to Shipes's amended complaint. On April 14, 1988, Shipes filed an opposing affidavit under Fed.Rule Civ.P. 56(f). This was followed, on June 16, 1988, by a motion from Shipes to compel discovery. On July 1, 1988, the district court granted summary judgment for Hanover on the good faith issue. *Shipes v. Hanover Ins. Co.,* 687 F.Supp. 601 (M.D.Ga.1988).[2]

## II.  DISCUSSION

We note at the outset that a grant of summary judgment is subject to *de novo* review. *Carlin Communication, Inc. v. Southern Bell Tel. & Tel. Co.,* 802 F.2d 1352, 1356 (11th Cir.1986). However, in a case such as this one involving a district court's interpretation of the law of the state where it sits, that interpretation is entitled to deference. *See Alabama Electric Cooperative, Inc. v. First National Bank of Akron,* 684 F.2d 789, 792 (11th Cir.1982). With this in mind, we address in turn the two issues raised in this appeal.

**1.** The court awarded Shipes $651.34 (58 times $11.23) plus 7% annual interest pursuant to O.C.G.A. § 7–4–2.

**2.** On July 11, 1988, the district court issued an unpublished final order entering the foregoing judgments, and denied as moot Shipes's intervening amended-complaint and discovery motions. On appeal, the parties devote some attention in their briefs to arguing the merits and timeliness of Shipes's amended-complaint motion. Because we affirm the grant of summary judgment on the good faith issue, which terminated the case, we agree with the district court's disposition of Shipes's motion and find it unnecessary to discuss its merits.

### A.  *The Benefits Issue*

PIP benefits themselves are governed by O.C.G.A. §§ 33–34–4 and 33–34–5 (1982 & Supp.1989).[3] Those sections are silent, however, on how to coordinate PIP benefits with workers' compensation. That issue is governed solely by section 33–34–8(c), which provides that PIP benefits will be reduced or eliminated to the extent a worker receives workers' compensation,

> provided that in no event shall the *aggregate amount of benefits* which the insured injured person is entitled to receive as compensation for the loss of income or earnings during disability under this chapter without regard to fault [*i.e.,* under a PIP benefits plan] and under any workers' compensation law *be less than an amount which is equal to the person's loss of income or earnings during disability* or an amount which is equal to the amount the person is entitled to receive as compensation for the loss under any workers' compensation law plus the limits of the coverage under any applicable policy of motor vehicle insurance or under any program of self-insurance providing such benefits, whichever is less. [Emphasis added.]

Although the language is convoluted, it clearly indicates that PIP benefits can be reduced by the amount of workers' compensation only to the extent necessary to prevent the total benefits from running higher than the worker's total lost wages. The worker's total benefits cannot fall below either (1) the amount of lost wages, or (2) the sum of the workers' compensation benefits plus the maximum PIP coverage,

**3.** Section 33–34–4 describes the minimum benefits required by law. Section 33–34–5 describes optional additional benefits. Under both the minimum and optional coverages, PIP benefits *alone* may not exceed 85% of the income lost due to injury. The policy held by Macon under which Shipes received benefits provided minimum coverage, but with a higher total payout limit of $50,000. Under that policy, Shipes was entitled to receive PIP benefits constituting 85% of his lost weekly wages, up to a weekly maximum of $200. Since Shipes made $224.67 a week, his maximum weekly PIP coverage was $190.97.

whichever is less. This means that Shipes's total benefits could not fall below the lesser of (1) his weekly lost wages of $224.67, or (2) $340.75.[4]

The district court, in adopting this interpretation of the statute, relied on its plain language and noted a 1980 Georgia Attorney General Opinion precisely on point.[5] Hanover's contrary position is based on dicta contained in two Georgia cases. *Brown v. Boston Old Colony Ins. Co.,* 247 Ga. 287, 275 S.E.2d 651 (1981), held simply that receipt of workers' compensation benefits did not entirely preclude receipt of PIP benefits. *Brown*'s statement of facts, however, mentions that the insurer in that case had initially paid the worker PIP benefits amounting to 85% of the difference between his lost wages and his workers' compensation benefits, just as Shipes was paid in this case. *Atlanta Casualty Co. v. Sharpton,* 158 Ga.App. 758, 282 S.E.2d 214 (1981), held that a worker could collect on his own personal PIP policy after exhausting the coverage of his employer-provided policy, up to the applicable overall PIP coverage limit. *Sharpton*'s recitation of facts noted that the worker in that case had received employer-provided PIP benefits equalling the difference between 85% of his lost wages and his workers' compensation benefits.[6]

In neither *Brown* nor *Sharpton* was the coordination of benefits at issue, however, apparently because the workers in those cases did not challenge the insurer's coordination. Each case decided a completely separate issue. We therefore agree with the district court that *Brown* and *Sharpton* do not justify departing from the plain meaning of section 33–34–8(c). While Attorney General Opinions are not regarded as binding authority in Georgia, *see Williams v. State,* 162 Ga.App. 415, 291 S.E.2d 732, 735 (1982), there is an absence in this case of any binding Georgia precedent on point. Because the interpretation adopted by the Georgia Attorney General and the district court below is perfectly in accord with the plain statutory language, and reflects a close familiarity with Georgia law, we find that interpretation persuasive.

## B. *The Good Faith Issue*

◼ Under O.C.G.A. §§ 33–34–6(b) and (c) (1982), when an insurer refuses to pay benefits to which an insured is entitled within certain time limits, it becomes liable for penalties, attorneys' fees, and punitive damages, unless it can prove that its refusal was in good faith.[7] Hanover concedes that it refused to pay the additional amount of PIP benefits claimed by Shipes within the applicable time limits. The only issue is whether, construing the record in Shipes's favor and taking into account his Rule 56(f) affidavit, any genuine issue of material fact exists as to Hanover's good faith. *See* Fed.Rule Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In considering whether Hanover is entitled to judgment "as a matter of law" under Rule 56(c), the relevant law is that of Georgia

---

**4.** The figure of $340.75 is obtained by adding Shipes's $149.78 weekly workers' compensation to his maximum weekly PIP coverage of $190.97. *See* footnote 3, *supra.*

**5.** *See* 1980 Ga. Att'y Gen.Op. 129 (No. 80–61). The opinion adopts the reading urged by Shipes in this case and provides a numerical example strikingly similar to the facts of this case. *See id.* at 131.

**6.** It makes an obvious difference whether the amount of workers' compensation is subtracted before or after the 85% multiplier is applied. The insurer in *Brown* first subtracted workers' compensation from the total lost wages, then gave the worker 85% of the difference. The insurer in *Sharpton* was much less generous,

first calculating 85% of the total lost wages, and then subtracting workers' compensation from that. Under the *Sharpton* facts, Shipes would have received only $41.19 a week in PIP benefits (85% of $224.67, or $190.97, minus $149.78), leaving him with a weekly shortfall of $33.70 instead of $11.23.

**7.** Under section 33–34–6(b), an insurer becomes potentially liable for attorneys' fees and "bad faith" penalties after 30 days from the time the insured supplies "reasonable proof" of the claim. Under section 33–34–6(c), an insurer becomes potentially liable for punitive damages after 60 days from the time of claim. *See Binns v. MARTA,* 250 Ga. 847, 301 S.E.2d 877, 878 (1983) (burden of proof on insurer to prove good faith, not on insured to prove bad faith).

relating to good faith under section 33–34–6.

An insurer acts in good faith if it has "reasonable" cause for nonpayment of a disputed claim. *See International Indemnity Co. v. Collins*, 258 Ga. 236, 367 S.E.2d 786, 788 (1988). *Collins* held that, while "[o]rdinarily, the question of good or bad faith is for the jury ... when there is no evidence of unfounded reason for the nonpayment, or if the issue of liability is close, the court should disallow imposition of bad faith penalties." *Id.* *Collins* further held that the insurer's nonpayment was reasonable as a matter of law in that case because it was based on an unsettled legal question which the insurer was entitled to litigate.[8] *See id.; accord Brown v. Seaboard Lumber & Supply Co.*, 221 Ga. 35, 142 S.E.2d 842, 845 (1965) ("no 'bad faith' exists where there is a doubtful question of law involved"); *State Farm Mutual Auto. Ins. Co. v. Harper*, 125 Ga.App. 696, 188 S.E.2d 813, 817 (1972) (" '[B]ad faith means a frivolous and unfounded denial of liability'.... Where questions of law ... have not been decided by the courts of Georgia and are not of easy solution, then a finding of ... bad faith ... [is] not authorized.").

In this case, there are no disputed factual issues regarding Shipes's entitlement to PIP benefits.[9] The sole issue is the correct interpretation of the governing statute. Hanover's legal argument on that point, while ultimately unpersuasive, is not "frivolous" or "unfounded." There is still no authoritative Georgia precedent on point. Despite the somewhat convoluted language of the statute, dicta in two cases, including one from the Georgia Supreme Court, appear to assume a different method of calculation.[10] Hanover notes that of the two methods described in the facts of *Brown* and *Sharpton*, it chose the more generous method in *Brown* in calculating Shipes's benefits. Hanover was "legally justified in litigating the issue." *See Collins*, 367 S.E.2d at 788.

Shipes argues that the district court, in granting summary judgment, improperly considered the credibility of an affidavit from Hanover's claims representative, Emita Hyman, asserting that Hanover "acted in good faith and relied upon [its] interpretation of O.C.G.A. § 33–34–8(c)" in calculating Shipes's benefits. *Cf. Carlin Communication, Inc. v. Southern Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1360 (11th Cir.1986) ("a court should be wary of placing too much reliance on the testimony of the movant regarding facts in its exclusive knowledge in granting a motion for summary judgment"). We do not agree. The district court merely noted that the letters of April 17, 1986 and May 1, 1986 attached to the affidavit support Hyman's assertions about Hanover's course of conduct. *See Shipes*, 687 F.Supp. at 603 & n. 2. The letters indicate on their face that Hanover asserted its interpretation of section 33–34–8(c) in direct response to Shipes's claim for the disputed benefits.[11] In accordance with Georgia law, the district court relied on the objective reasonableness of that interpretation in granting summary judgment.

Shipes also argues that summary judgment was improper in the face of his Rule 56(f) affidavit and pending motion to compel. The cases on which he relies are readi-

---

8. In view of *Collins*, Shipes's reliance on earlier Georgia cases which suggested that good faith is always a question for the jury is unavailing. *See, e.g., Binns v. MARTA*, 250 Ga. 847, 301 S.E.2d 877, 878 (1983); *Bituminous Casualty Corp. v. Mowery*, 145 Ga.App. 45, 244 S.E.2d 573, 579 (1978).

9. *Cf. Insurance Co. of North America v. Smith*, 189 Ga.App. 353, 375 S.E.2d 866, 868–69 (1988) (good faith not established as a matter of law where *factual* issues relating to insured's entitlement to benefits exist); *Canal Ins. Co. v. Henderson*, 183 Ga.App. 880, 360 S.E.2d 435, 437–38 (1987) (same).

10. This distinguishes the instant case from *Mowery*, 244 S.E.2d at 578, which held that the mere fact that an issue is one of first impression would not *by itself* establish good faith on the part of an insurer litigating the issue.

11. The record indicates that Shipes's attorney and Hyman spoke by telephone regarding their respective interpretations of section 33–34–8(c) on February 6 and 10, 1986. The April 17, 1986 letter from Shipes's attorney was the first written demand for the disputed benefits, however.

ly distinguishable.[12] Under the Georgia law of good faith, the further evidence sought by Shipes was simply immaterial. The district court correctly granted summary judgment on the basis of the record before it, on the ground that Hanover had established its good faith as a matter of law.

## III. CONCLUSION

For the reasons stated, the judgment of the district court is AFFIRMED in all respects.

---

12. *See Sam Wong & Son, Inc. v. New York Mercantile Exchange,* 735 F.2d 653, 678 (2d Cir. 1984) (summary judgment in face of Rule 56(f) affidavit improper where "motive, intent, and subjective feelings and reactions" are at issue); *Mid–South Grizzlies v. National Football League,* 720 F.2d 772, 779 (3d Cir.1983), *cert. denied,* 467 U.S. 1215, 104 S.Ct. 2657, 81 L.Ed.2d 364 (1984) ("Where Rule 56(f) affidavits have been filed ... and the facts are in the possession of the mov-ing party ... [further] discovery should be granted almost as a matter of course."). In *Sam Wong,* the party opposing summary judgment had made a preliminary showing of personal animosity, a factor which Shipes does not even allege in this case. *Mid–South Grizzlies,* despite the above-quoted dicta, *upheld* denial of further discovery, in part because, as in this case, the evidence sought was simply irrelevant. *See* 720 F.2d at 780–81.