894 F.2d 1287
 11 UCC Rep.Serv.2d 723
 LEASING SERVICE CORPORATION, a corporation, Plaintiff-Third
Party Plaintiff-Appellee, Cross-Appellant,
v.
HOBBS EQUIPMENT COMPANY, a corporation, Defendant-Third
Party Plaintiff-Appellee, Cross-Appellant,
v.
COLONIAL BANK OF NORTH ALABAMA, formerly Bank of Moulton, a
corporation, Third Party Defendant, Appellant,
River City Construction Company, Inc., an Alabama
corporation, Third Party Defendant.
 No. 89-7179.
 United States Court of Appeals,
Eleventh Circuit.
 Feb. 20, 1990.
As Amended March 15, 1990.
 
 George W. Royer, Jr., William J. Gibbons, Jr., Sirote, Permutt, McDermott, Slepian, Friend, Friedman, Held & Apolinsky, P.C., Huntsville, Ala., for Colonial Bank of North Alabama.
 L. Bruce Ables, Berry, Ables, Tatum, Little & Baxter, P.C., Huntsville, Ala., for Hobbs Equipment Co.
 Michael L. Hall, Corneal L. Domeck, III, Johnston, Barton, Proctor, Swedlaw & Naff, Birmingham, Ala., for Leasing Service Corp.
 Appeals from the United States District Court for the Northern District of Alabama.
 Before KRAVITCH and JOHNSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.
 JOHNSON, Circuit Judge:
 
 
 1
 This case arises on appeal from (1) the district court's grant of summary judgment to the plaintiff Leasing Services Corporation ("LSC") against the defendant Hobbs Equipment Co. ("Hobbs") and the third-party defendant Colonial Bank ("the Bank") and (2) the district court's grant of summary judgment to Hobbs on its third-party complaint against the Bank. 707 F.Supp. 1276.
 
 I. FACTS
 A. Background
 
 2
 This case concerns the priority of two competing financing statements under Alabama law. On July 8, 1980, Chatham Machinery, Inc. ("Chatham") leased two cranes to River City Construction Company, Inc. ("River City") of Decatur, Alabama. Welborn Dent, the President of River City, executed an equipment lease agreement covering the cranes for River City. Chatham immediately assigned the lease to LSC.
 
 
 3
 On July 11, 1980, LSC filed with the Secretary of State of Alabama a financing statement on Form UCC-1 with the lease agreement attached. The financing statement provided that LSC had a security interest in "[a]ll machinery, inventory, equipment and goods as described in the attached entire agreement...." The lease agreement provided: "In any jurisdiction where the Uniform Commercial Code is in effect, Lessee [River City] grants to Lessor [LSC] a security interest in the Equipment and any and all inventory, goods, equipment, machinery, fixtures and assets of any and every kind, wherever located, now or hereafter belonging to Lessee." LSC filed a continuation statement extending its security interest on May 27, 1985.[1]
 
 
 4
 In 1981-82, River City defaulted on its lease obligations, and LSC foreclosed.[2] LSC took possession of the two cranes that were the subject of the lease and auctioned them. The auction proceeds were insufficient to cover River City's obligations under the lease agreement, and LSC sued River City to recover the deficiency. The district court awarded LSC a deficiency judgment of $304,185. This Court upheld the judgment but reduced the damages by $40,000. Leasing Serv. Corp. v. River City Constr., Inc., 743 F.2d 871 (11th Cir.1984). After the district court entered its judgment, and again after this Court entered judgment, LSC filed certificates of judgment in the Probate Court of Morgan County.
 
 
 5
 The Bank and its predecessor, the Bank of Moulton, had been River City's primary source of credit for many years. On May 22, 1975, the Bank loaned River City $105,000 to purchase a Lorain Model MC 785 crane ("Lorain crane"). River City granted the bank a security interest in the Lorain crane, and the Bank filed a financing statement on a Form UCC-1 with the Secretary of State of Alabama on May 23, 1975. This financing statement was not continued, and the Bank's perfection of its security interest expired on May 23, 1980. See Ala.Code Sec. 7-9-403(2); note 1, supra. In February 1977, the Bank refinanced River City's loans from the Bank. River City granted the Bank another security interest in the Lorain crane and in "[a]ll other construction equipment, including welders, cables, hand tools, supplies, and other equipment, whether now owned or hereafter acquired, together with all replacements or additions." The Bank filed a financing statement covering its security interest in February of 1977. This financing statement was not continued and the Bank's perfection of its security interest expired in February of 1982.
 
 
 6
 On February 7, 1983, the Bank extended a new loan to River City and filed a financing statement covering all of River City's equipment. Prior to filing this financing statement, the Bank requested that the Secretary of State of Alabama conduct a lien search for all financing statements showing River City as debtor. This search revealed the July 11, 1980 filing by LSC, and the Secretary of State forwarded a copy of LSC's financing statement to the Bank.
 
 
 7
 On September 26, 1983, Hobbs purchased the Lorain crane from River City for $75,000. Hobbs immediately sold the Lorain crane to Bell Construction Co. for $82,000. Representatives of Bell Construction picked up the Lorain crane from River City. At the time that Hobbs purchased the Lorain crane, Hobbs, River City, and the Bank believed that the Bank was the priority lienholder on the Lorain crane. Hobbs therefore paid the $75,000 purchase price to the Bank, which applied the proceeds to River City's obligations to the Bank. On May 31, 1985, LSC demanded that Hobbs pay LSC the money that Hobbs received from Bell Construction. Hobbs refused.
 
 
 8
 On May 17, 1985, River City sold a Hobart 2300 welder ("welder") to a third party for $10,000. River City paid the entire sales price to the Bank. At the time that it received the $10,000, the Bank knew that the money represented the sales proceeds of the welder. LSC claims priority to the proceeds of the Lorain crane and the welder based on its July 11, 1980 financing statement.
 
 B. Proceedings in the District Court
 
 9
 LSC filed suit against Hobbs on July 5, 1985 alleging that the Lorain crane was at all times subject to a first priority security interest in favor of LSC and that Hobbs's sale of the Lorain crane constituted a conversion of LSC's property. LSC claimed that, therefore, it was entitled to the $82,000 that Hobbs received from the sale of the Lorain crane to Bell Construction. Hobbs filed a third party complaint against the Bank and River City, seeking restitution of the amounts paid to the Bank in reliance on the representations of the Bank and River City that they could deliver good and merchantable title to the Lorain crane. LSC then filed a third-party complaint against the Bank claiming conversion of the $75,000 purchase price paid by Hobbs. The Bank answered, claiming that LSC's security interest in River City's property was limited to the two cranes that were the subject of the July 8, 1980 lease. The Bank also claimed that the portion of LSC's July 11, 1980 financing statement perfecting LSC's security interest in all of River City's equipment was unenforceable because of fraud and unconscionability.
 
 
 10
 LSC, Hobbs, and the Bank submitted summary judgment motions. In an order dated September 30, 1987, the district court denied all motions for summary judgment. In a Memorandum of Decision dated February 6, 1989, however, the district court, sua sponte, took up the motions for summary judgment again, vacated its earlier order denying summary judgment, and granted summary judgment to LSC on its complaints against Hobbs and the Bank, and to Hobbs on its complaint against the Bank.
 
 
 11
 In granting summary judgment against the Bank, the district court found that the security agreement in the lease was valid despite Chatham's failure to qualify to do business before it signed the lease on July 8, 1980. The court also dismissed arguments by the Bank and Hobbs that the security agreement in the lease was fraudulent and unconscionable.[3] Finally, the district court held that the descriptions of collateral in the July 8, 1980 lease and the July 11, 1980 financing statement were not inadequate or misleading.
 
 
 12
 In this appeal, first we consider whether the financing statement filed by LSC on July 11, 1980 was adequate to put third parties such as Hobbs and the Bank on notice of LSC's security interest. Second, we consider whether the district court erred in holding that LSC was entitled to $75,000 in damages from Hobbs rather than $82,000. Finally, we consider whether the district court erred in ruling that the Bank must make restitution to Hobbs for the $75,000 that Hobbs paid to the Bank.
 
 II. DISCUSSION
 
 13
 A grant of summary judgment is subject to de novo review by this Court. Shipes v. Hanover Ins. Co., 884 F.2d 1357, 1359 (11th Cir.1989). In a case involving a district court's interpretation of the law of the state where it sits, however, the district court's interpretation is entitled to deference. Id. This Court must ask whether there is any genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. Palmer v. BRG of Georgia, Inc., 874 F.2d 1417, 1422 (11th Cir.1989); Fed.R.Civ.P. 56.
 
 A. Notice Filing
 
 14
 Alabama has adopted the provisions of the Uniform Commercial Code covering secured transactions. See Ala.Code Secs. 7-9-101 to 7-9-507. Section 7-9-402 deals with the formal requirements of a financing statement that secures a creditor's interest in a debtor's property. Ala.Code Sec. 7-9-402.[4] The official comments explain that section 7-9-402 adopts a system of notice filing.
 
 
 15
 What is required to be filed is not, as under the chattel mortgage and conditional sales acts, the security agreement itself, but only a simple notice which may be filed before the security interest attaches or thereafter. The notice itself indicates merely that the secured party who has filed may have a security interest in the collateral described. Further inquiry from the parties concerned will be necessary to disclose the complete state of affairs.
 
 
 16
 Ala.Code Sec. 7-9-402, official comment 2. Thus, the sufficiency of a description in a financing statement is measured in terms of notice to third parties of the secured party's claim. First Nat'l Bank of Franklin County v. Smith, 447 So.2d 705, 708 (Ala.1984); Galleon Indus., Inc. v. Lewyn Mach. Co., Inc., 279 So.2d 137, 141 (Ala.Civ.App.), cert. denied, 291 Ala. 779, 279 So.2d 142 (1973).
 
 
 17
 Hobbs and the Bank argue that the July 11, 1980 filing by LSC was inadequate to place third parties such as Hobbs and the Bank on notice that LSC claimed a security interest in all of River City's equipment. They argue that the form of the financing statement and attached lease agreement was too complicated for a person to be able to find the clause where LSC asserted its security interest. Hobbs and the Bank assert that because the lease agreement had a box entitled "Description of Equipment" that contained descriptions of only two pieces of equipment, it was misleading to place a "dragnet clause" covering all of River City's equipment in a subsequent paragraph of the lease agreement.
 
 
 18
 Under the circumstances of this case, this argument is not convincing. The financing statement filed by LSC, which the Bank had in its possession at the time that it extended credit to River City, provided that LSC's security interest covered "[a]ll machinery, inventory, equipment and goods as described in attached entire agreement...." (emphasis added). This puts the reader on notice that he should read the entire lease agreement. The lease agreement itself stated that River City granted LSC a security interest in "any and all inventory, goods, equipment, machinery, fixtures and assets of any and every kind, wherever located, now or hereafter belonging to [River City]." This language in the lease agreement created an interest in favor of LSC in all of River City's equipment, including the Lorain crane.
 
 
 19
 Hobbs's and the Bank's argument is particularly unconvincing because Hobbs is a heavy equipment dealer and the Bank is a bank. Hobbs is familiar with the use of security agreements because it regularly makes sales of equipment that are financed through banks. Hugh Hobbs, Jr. testified in his deposition that he knew that River City did not own the Lorain crane outright, and that he instructed his salesman to call the Bank to check on how Hobbs could obtain clear title. Similarly, the Bank regularly files security agreements on its own behalf. In fact, the Bank's February 1977 security statement had a "dragnet clause" similar to the one that the Bank challenges in this case.[5] Apparently, Hobbs and the Bank simply failed to read the financing statement and the lease agreement. Given the sophistication of Hobbs and the Bank in questions of secured transactions, their failure to read the entire lease agreement is inexcusable. Cf. Grant v. Preferred Research, Inc., 885 F.2d 795, 799 (11th Cir.1989) (law school graduate's education should heighten his awareness of fraud). Accordingly, LSC's security interest is entitled to priority over the Bank's security interest. LSC, therefore, is entitled to all River City equipment that is held by the Bank and to the proceeds of the Lorain crane and the welder.
 
 B. Valuation of the Lorain Crane
 
 20
 LSC argues that it is entitled to the entire $82,000 that Hobbs received from Bell Construction for the Lorain crane. Hobbs maintains that LSC is entitled only to the $75,000 that Hobbs paid to the Bank. Hobbs asserts that the extra $7,000 in the price to Bell Construction represents work that Hobbs performed on the Lorain crane before Bell Construction took possession.
 
 
 21
 Under Alabama law, the measure of compensatory damages in an action for conversion is either the fair market value on the date of conversion or the fair market value at any subsequent time, whichever is greater, along with interest from the date of conversion. Brown v. Campbell, 536 So.2d 920, 922 (Ala.1988). Thus, if $82,000 was the fair market value of the Lorain crane at the time of the sale to Bell Construction, LSC is entitled to that amount plus interest. If Hobbs improved the Lorain crane, however, before selling it to Bell Construction, LSC is required to compensate Hobbs for the value of the improvements. See Restatement of Restitution Sec. 158 (1937) ("A person is entitled to specific restitution of property from another or to the product of such property only on condition that he compensate the other for expenditures with reference to the subject matter which have inured to his benefit...."). Hobbs has presented no evidence that it improved the Lorain crane before Bell Construction took possession. The Lorain crane remained at River City after Hobbs purchased it, and representatives of Bell Construction picked up the Lorain crane at River City. The chairman of Hobbs testified, moreover, that Hobbs did not generally do repair work in Birmingham, Alabama, River City's location, because it was too far from Nashville, Tennessee, Hobbs's location. Because Hobbs has presented no evidence supporting its claim that it improved the Lorain crane before selling it to Bell Construction, Hobbs has not raised a genuine issue of fact concerning the amount of damages due LSC. See Celotex v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). LSC, therefore, is entitled to the entire $82,000 sales price from Bell Construction plus interest from the date of conversion.
 
 C. Restitution to Hobbs
 
 22
 The law of unjust enrichment allows a person to recover monies paid to another by mistake or fraud. Sherrill v. Frank Morris Pontiac-Buick, Inc., 366 So.2d 251, 257 (Ala.1978); Oliver v. Hayes Int'l Corp, 456 So.2d 802, 805 (Ala.Civ.App.1984). One who receives money from another through a mistake of fact is not relieved of restitution liability simply because the other could have discovered the true facts through the exercise of greater diligence. Oliver, 456 So.2d at 805. Other jurisdictions have stated, however, that where a person detrimentally relies on another's mistaken payment and it would be unjust to require restitution, the payee does not have to make restitution. See, e.g., Akerson v. Gupta, 458 F.Supp. 189, 191 (E.D.Mo.1978) (citing 66 Am.Jur.2d Restitution and Implied Contracts Sec. 119).
 
 
 23
 In the present case, both Hobbs and the Bank were under the mistaken assumption that the Bank was the only party with a security interest in the equipment. Hobbs paid the Bank the $75,000 sales price for the Lorain crane based on this mistake. Hobbs, therefore, is entitled to restitution of the $75,000, plus interest. The Bank argues that it detrimentally relied on Hobbs's mistake by crediting River City's account and that therefore it need not return the $75,000. The Bank's argument is unconvincing. The Bank's crediting of River City's account did not cause a change in position for the Bank because the Bank would not have been able to recover any money from River City even if it had refused to renew River City's outstanding loans and pursued River City more vigorously. LSC had a first priority lien on all of River City's assets. Furthermore, it would be unjust not to require restitution in the present case. It was the Bank's negligence in failing to read the lease agreement that precipitated the misunderstanding about LSC's security interest. It would be unjust to allow the Bank to retain the sales proceeds and avoid liability for a loss caused by its own negligence. Accordingly, the Bank may not retain the $75,000 that it received from Hobbs.
 
 III. CONCLUSION
 
 24
 We AFFIRM the district court's grant of summary judgment for LSC against Hobbs and the Bank to the extent that the district court found that LSC's security interest was entitled to priority over the Bank's security interest. We REVERSE and REMAND the district court's holding that LSC is entitled to only $75,000 from Hobbs, with directions to enter an award of $82,000 plus interest from the date of conversion in favor of LSC. We AFFIRM the district court's holding that Hobbs is entitled to restitution of $75,000 plus interest from the Bank.
 
 
 
 [1]
 Under Alabama law, a properly filed security interest is valid for five years from the date of the filing. Ala.Code Sec. 7-9-403(2). Under Ala.Code Sec. 7-9-403(3), a secured party must file a continuation statement within six months prior to the expiration of a security interest in order to continue the security interest
 
 
 [2]
 River City subsequently filed for bankruptcy and is not a party to this appeal
 
 
 [3]
 The Bank does not appeal the district court's holding that LSC's lease agreement is enforceable despite Chatham's failure to register to do business in Alabama. The Bank also does not appeal the district court's holding that LSC's lease agreement and financing statement are not fraudulent. Accordingly, we do not reach these issues
 
 
 [4]
 A properly filed financing statement perfects an interest in a debtor's property. Nat'l Ropes, Inc. v. Nat'l Diving Serv., Inc., 513 F.2d 53, 56 (5th Cir.1975) (Georgia UCC Sec. 9-302). A security agreement or, in this case, a lease agreement creates an interest in a debtor's property. Id
 
 
 [5]
 The February 1977 financing statement in favor of the Bank contained a clause covering "all other construction equipment ... whether now owned or hereafter acquired."