Timothy McELROY, by his legal guardians, Thomas McELROY and Vivian McElroy, Plaintiffs–Appellants,

v.

The FIRESTONE TIRE & RUBBER COMPANY, a foreign corporation, Defendant–Appellee.

No. 88–3238.

United States Court of Appeals, Eleventh Circuit.

March 1, 1990.

Thomas E. Whigham, Sanford, Fla., John C. Risjord and Randy W. James, John C. Risjord & Associates, P.C., Overland Park, Kan., Bernard Zimmerman, Orlando, Fla., for plaintiffs-appellants.

Rafael Martinez, Sanders, McEwan, Mims & Martinez, Orlando, Fla., Harvey Grossman, Los Angeles, Cal., Frances F. Prell, Colin Smith and William Turbeville, Burke, Bosselman & Weaver, Chicago, Ill., for defendant-appellee.

Before JOHNSON and ANDERSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

JOHNSON, Circuit Judge:

The plaintiffs appeal from an adverse judgment in this product liability suit brought under Florida law against the Firestone Tire & Rubber Company ("Firestone").

## I. STATEMENT OF THE CASE

Timothy McElroy suffered a grievous accident on July 28, 1981, the day after his eighteenth birthday, while working for Altamonte Towing Service ("Altamonte"), a truck-towing company in Altamonte Springs, Florida. Altamonte had ordered a used truck wheel assembly for one of its tow-trucks from Odom Bandag, Inc. ("Odom"), a tire retreading service. The assembly included a retreaded tire and a used wheel. Odom had obtained the wheel from its sister corporation, Dade City Tire Service, Inc. ("Dade City"). The wheel consisted of three components, all manufactured by Firestone: a rim base manufactured in January 1974, a side ring manufactured in June 1962, and a lock ring manufactured in May 1959. An employee of Odom assembled the wheel and tire, but left the assembly uninflated. The lock ring was heavily rusted, corroded, and cracked, a condition which should have been visible to anyone assembling the wheel and tire, but which became concealed after assembly was completed.

Jeff Andrews, a mechanic employed at Altamonte, picked up the wheel assembly from Odom on the morning of July 28, and left it on a concrete slab in Altamonte's garage. McElroy, who had graduated from high school the month before, did odd jobs around the garage at Altamonte. His responsibilities did not include inflating truck tires, however, and he had no particular expertise in that area. Nevertheless, while Andrews and several other employees were eating lunch, McElroy found the uninflated tire and proceeded to inflate it. Altamonte lacked a safety cage for use during truck tire inflation, despite Occupational Safety and Health Administration ("OSHA") regulations requiring such a precaution. The tire exploded when the lock ring and side ring separated from the rim base under pressure, severely injuring McElroy and causing permanent brain damage. Although he eventually regained most physical motor functions, he incurred serious, long-term cognitive, memory, and motivational disabilities. He also lost his sense of smell, was totally blinded in one eye, and lost his peripheral vision in his other eye.

In June 1983, McElroy sued Odom, Dade City, and Firestone in Florida state court. Odom and Dade City agreed to a $475,000 settlement. In June 1984, the remaining action against Firestone was removed to federal court on diversity grounds. On October 31, 1985, Firestone moved for summary judgment on the basis of Florida's 12–year statute of repose for product liability actions. *See* Fla.Stat.Ann. § 95.031(2) (West 1982), *repealed in relevant part,*

1986 Fla.Laws, ch. 86–272, § 2.[1] On March 4, 1986, the district court granted summary judgment for Firestone as to the lock ring and side ring. The case proceeded to trial regarding the rim base, on theories of negligence and strict liability for defective design. Trial began on April 10, 1987; following voluminous testimony and evidence, the case was submitted to the jury on May 4, 1987. The jury delivered a verdict for Firestone on May 6, 1987. McElroy filed a motion for a new trial on May 15, 1987, which was denied on March 16, 1988. On June 2, 1987, McElroy filed a motion to interview the jurors, which was denied on June 25, 1987. On March 30, 1988, McElroy appealed to this Court, contending that (1) the district court erred by granting summary judgment as to the lock ring and side ring on the basis of the Florida statute of repose, (2) the district court improperly instructed the jury regarding causation and Firestone's defenses relating to causation, and (3) the district court improperly handled an incident involving a juror who became emotionally distraught during deliberations.

## II. DISCUSSION

### A. *The Statute of Repose*

■ The district court's grant of summary judgment is subject to *de novo* review. *Shipes v. Hanover Ins. Co.*, 884 F.2d 1357, 1359 (11th Cir.1989). This Court asks whether, construing the record in McElroy's favor, any genuine issue of material fact exists precluding judgment for Firestone as a matter of law. *See id.* at 1360–61; Fed.R.Civ.P. 56(c). "[T]he substantive law"—in this case, the Florida law of product liability—"will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). While the Florida courts are the ultimate authority on Florida law, a federal district court's interpretation of the law of the state where it sits is entitled to deference from this Court. *Shipes*, 884 F.2d at 1359.

Florida's statute of repose provides that "[a]ctions for products liability ... under [Fla.Stat.Ann. § ] 95.11(3) [2] must be begun ... within 12 years after the date of delivery of the completed product to its original purchaser ... regardless of the date the defect in the product ... was or should have been discovered." Fla.Stat.Ann. § 95.031(2) (West 1982). The statute bars untimely claims for injury from a product based on, *inter alia*, negligence, implied warranty, and strict liability. *See Pullum v. Cincinnati, Inc.*, 458 So.2d 1136, 1138 (Fla.App.1984), *aff'd*, 476 So.2d 657 (Fla. 1985), *appeal dismissed*, 475 U.S. 1114, 106 S.Ct. 1626, 90 L.Ed.2d 174 (1986).

It is not disputed that the lock ring and side ring involved in McElroy's injury were manufactured in 1959 and 1962, respectively,[3] and that those components were sold

---

**1.** In 1980, the Florida Supreme Court held that the statute of repose violated the state constitutional right of access to the courts in cases where the injury occurred after the expiration of the time for filing suit. *Battilla v. Allis Chalmers Mfg. Co.*, 392 So.2d 874 (Fla.1980); *see also Purk v. Federal Press Co.*, 387 So.2d 354 (Fla. 1980) (upholding statute where injury occurred a reasonable time before expiration of repose period, thus not precluding opportunity to file suit). The court reversed itself five years later, however, in *Pullum v. Cincinnati, Inc.*, 476 So.2d 657, 659 (Fla.1985), *appeal dismissed*, 475 U.S. 1114, 106 S.Ct. 1626, 90 L.Ed.2d 174 (1986) (receding from *Battilla* and upholding statute of repose). It is now established under Florida law that the July 1, 1986 repeal of the statute has no retroactive effect on causes of action accruing before repeal, but that *Pullum* does apply retroactively; thus, causes of action accruing after *Battilla* but before repeal are sub-

ject to the statute of repose. *See Melendez v. Dreis and Krump Mfg. Co.*, 515 So.2d 735 (Fla. 1987); *see also Eddings v. Volkswagenwerk, A.G.*, 835 F.2d 1369 (11th Cir.), *cert. denied sub nom. Griffin v. Ford Motor Co.*, — U.S. —, 109 S.Ct. 68, 102 L.Ed.2d 44 (1988) (upholding statute and retroactive application of *Pullum* against federal constitutional challenge). Thus, it is not disputed that McElroy's claim is subject to the statute.

**2.** Section 95.11(3)(e) (West 1982) provides for a 4–year statute of limitations for "[a]n action for injury to a person founded on the design, manufacture, distribution, or sale of personal property that is not permanently incorporated in an improvement to real property, including fixtures."

**3.** Dates of manufacture are stamped on each component.

by Firestone well over twelve years before McElroy filed suit—indeed, well over twelve years before the accident even occurred. If, as Firestone contends, the individual wheel components constituted the separate "completed products," and the manufacturers, dealers, or distributors to which Firestone initially sold the components constituted the relevant "original purchasers," Firestone clearly would be entitled to summary judgment under the statute of repose. On the other hand, if, as McElroy contends, the wheel components did not become part of a "completed product" until assembled together as a truck wheel, and did not pass to the relevant "original purchaser" until purchased by an ultimate consumer or user of the assembled wheel, it is clear that Firestone would not be entitled to summary judgment.[4]

There is no published or appellate Florida caselaw on point on this issue.[5] Cases and statutes can be found in other jurisdictions which support both McElroy's and Firestone's approaches. Indiana, for example, has interpreted its statute of repose to commence "at the time the product is delivered from the manufacturer, wholesaler, retailer, or distributor to the first consuming entity.... The term 'seller' encompasses not only manufacturers but also the intermediaries. 'User or consumer' does not." *Whittaker v. Federal Cartridge Corp.*, 466 N.E.2d 480, 482 (Ind.App.1984). Indiana's statute, however, specifically provides that " '[s]eller' includes a manufacturer, a wholesaler, a retail dealer or a distributor" and the repose period begins only upon "delivery of the product to the initial user or consumer." *See id.* (quoting Ind.Code §§ 33–1–1.5–2 and 33–1–1.5–5); *cf. Daily v. New Britain Machine Co.*, 512 A.2d 893, 896 n. 5, 903–06 (Conn.1986) (upholding Connecticut statute barring claims brought "later than ten years from the date that the [defendant] last parted with possession or control of the product").[6] Reliance on non-Florida case or statutory law is ultimately of little use in view of the divergent language of the various statutes.[7]

**4.** Firestone bears the burden of proving the applicability of the statute of repose. *See Hampton v. A. Duda & Sons, Inc.*, 511 So.2d 1104 (Fla.App.1987) (statute of repose an affirmative defense); *see also Glass v. Camara*, 369 So.2d 625, 628–29 (Fla.App.1979) (burden of proving applicability of statute of limitations on defendant; summary judgment improper "on a record lacking evidence on that issue"). Because Firestone could not offer any evidence as to when the lock or side rings might have been resold as part of a complete, operable wheel assembly, McElroy would prevail on that issue.

**5.** McElroy brings to our attention an unpublished order by a Florida trial judge denying summary judgment on the basis of McElroy's theory of the statute of repose. *See Cook v. Firestone Tire & Rubber Co.*, No. CI–86–1538 (Fla.Cir.Ct., Orange Cty., Oct. 27, 1987) (finding "genuine issue of material fact as to the date of delivery of the complete product, being the RH5 wheel, to the original purchaser, that being the user or consumer and not sellers such as original equipment vehicle manufacturers, wholesalers, distributors or dealers"). The statute of repose issue apparently was not raised in the appeal, the disposition of which was also unpublished. *See Cook v. Budd Co.*, 538 So.2d 1271 (Fla.App.1989) (affirmance noted in table). In view of the absence of substantial discussion or analysis in the trial judge's opinion, and in the absence of any showing that other Florida trial judges have addressed this issue and followed this interpretation, we are unwilling to view this isolated interlocutory ruling as an authoritative statement of Florida law.

**6.** Some statutes of repose have simultaneously accommodated both theories urged in this case. *See Thomas v. Unique Food Equipment, Inc.*, 182 Ill.App.3d 278, 130 Ill.Dec. 906, 907, 537 N.E.2d 1375, 1376 (1989) (citing Illinois statute providing that "no product liability action ... shall be commenced except ... within 12 years from the date of first sale, lease or delivery of possession by a seller or 10 years from the date of first sale, lease or delivery of possession to its initial user, consumer, or other non-seller, whichever period expires earlier"); *Berry v. Beech Aircraft Corp.*, 717 P.2d 670, 671–72, 683 (Utah 1985) (striking down under state constitution Utah statute barring product liability claims brought "more than six years after the date of initial purchase for use or consumption, or ten years after the date of manufacture").

**7.** We find equally unhelpful *Jackson v. Firestone Tire & Rubber Co.*, 788 F.2d 1070, 1076 (5th Cir.1986), a case invoked by McElroy in which the present Fifth Circuit observed that, "from the narrowest perspective, the 'product' at issue here is the particular truck wheel that exploded." The court was simply discussing the admissibility of evidence regarding wheel component models similar in design to the particular models involved in that case. The issue of what

A strict construction of the Florida statute tends to support Firestone's position; it is undeniable, after all, that the entities to which Firestone initially sold the components involved in this case were, literally speaking, the "original purchasers." We find support for a strict construction of the statute in *Barber Greene Co. v. Urbantes*, 517 So.2d 768 (Fla.App.1988), where the court addressed the applicability of the statute of repose to a piece of machinery leased to the plaintiff's employer sixteen years before the accident suffered by the plaintiff, but actually purchased only seven years before. The court held that the statute ran from the date of the purchase rather than the date of the lease, thus finding the claim not barred. The court stated: "We agree with the manufacturer that the raison d'etre for the statute should apply with equal force to manufactured products *delivered* under a lease, especially so when, as here, the employer eventually purchased the machinery. However, the wording of the statute is unequivocal and we decline to interpret it otherwise." *Id.* at 769 (emphasis in original). The court in *Urbantes* thus implicitly rejected McElroy's argument that the running of the statute should be tied to actual *use* of the product by some consumer, rather than to the date of the "original purchase," which may postdate (as in *Urbantes*) or predate (as in this case) the commencement of actual use.

McElroy objects that to divorce the triggering of the statute from actual use would allow the statute to run while Firestone's products "sit harmlessly unused" on a dealer's inventory shelf. Given the effectively unlimited shelf life of the components at issue in this case, a consumer could conceivably purchase a seemingly new product which has already become immune from liability for any defective or negligent design. Balanced against this potential anomaly,[8] however, are the formidable, perhaps insoluble, problems which McElroy's approach would create for the manufacturer in attempting to manage and predict its own liability. The evidence in this case is undisputed that Firestone sells its wheel components separately as individual finished products, and thereafter has no way of knowing or controlling when or whether any particular component will be installed on a wheel and put into actual use. The three components at issue here were manufactured and sold many years apart and were apparently never united in the same wheel assembly until immediately prior to the accident. It is quite evident that each of the components had by then been used in a succession of different wheel assemblies over the years. It would be impossible to determine when each of them may have been first assembled in a "completed product" according to McElroy's definition.[9]

Thus, in this case, even more than in *Urbantes*, tying the statute to the original sale rather than actual use has the virtue of a simple, clearcut, manageable standard. This serves two of the "[p]rimary rationales" for statutes of repose: "that they obviate the difficulties of securing evidence concerning products that have been in commerce for a long time and that they enable more certain business planning, particularly with respect to liability insurance." Marshall S. Shapo, *The Law of Products Liability* ¶ 30.12[1], at 30–42 (1987). In

---

constitutes sale of a "completed product" did not arise. *Jackson* also refers in dicta to Firestone's "efforts to design, manufacture, and market wheel *components*," which tends to cut against McElroy's position. *See id.* (emphasis added).

**8.** We think it clear that running the statute of repose from the time of the manufacturer's original sale would, generally speaking, be a reasonable approximation of running the statute from the commencement of actual use. It is not disputed in this case that the vast majority of wheel components are sold to manfacturers to meet ongoing production needs. It seems unlikely that the fraction of components which lie unused in inventory for years is very high.

**9.** We find little force in McElroy's argument that the wheel components are not "completed products" because they are of no use in their individual, unassembled state. The same could be said of many products. Batteries, for example, are of no use until installed in an appliance or machine. Under McElroy's definition, even an assembled truck wheel is of no use—and therefore not "completed"—until installed on an operating truck.

sum, given the deference which we owe to the district court's interpretation of Florida law, the lack of any contrary published or appellate Florida caselaw, and the interpretive approach of the Florida court in *Urbantes,* we find Firestone's interpretation of the statute of repose to be more persuasive. The district court therefore correctly granted partial summary judgment as to the lock and side rings.

### B. *The Jury Instructions*

McElroy raises several challenges to the district court's jury instructions. The standard applied by this Court on review is deferential: "So long as [the] instructions reflect the pertinent substantive law, the trial judge is given wide discretion as to the style and wording that [she] may employ." *Andres v. Roswell–Windsor Village Apartments,* 777 F.2d 670, 673 (11th Cir. 1985).

> When the instructions, taken together, accurately express the law applicable to the case without confusing or prejudicing the jury, there is no reason for reversal even though isolated clauses may, in fact, be confusing, technically imperfect, or otherwise subject to criticism. An erroneous instruction does not require reversal unless the reviewing court is left with a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations.

*National Independent Theatre Exhibitors, Inc. v. Charter Financial Group, Inc.,* 747 F.2d 1396, 1402–03 (11th Cir.1984) (citations and internal quotation marks omitted), *cert. denied sub nom. Patterson v. Charter Financial Group, Inc.,* 471 U.S. 1056, 105 S.Ct. 2120, 85 L.Ed.2d 484 (1985); *see also Pesaplastic, C.A. v. Cincinnati Milacron Co.,* 750 F.2d 1516, 1525 (11th Cir.1985) (judgment not disturbed absent showing of prejudicial harm from erroneous instruction or failure to instruct). We conclude that none of McElroy's challenges to the jury instructions are meritorious.

First, McElroy contends that the court improperly instructed the jury on Firestone's defenses that the actions of others and/or the condition of the lock ring were the sole legal causes of McElroy's injury. We need not decide this issue, because the jury's form verdict indicates that it found McElroy failed to prove any negligence or defective product design on Firestone's part in the first place, and did not reach either of Firestone's affirmative defenses. Accordingly, any error could not have prejudiced McElroy. Second, McElroy contends that the court gave confusing and misleading instructions as to "legal cause" which led the jury to believe that Firestone's alleged negligence or defective product design had to be shown to be the "sole legal cause" of McElroy's accident. This claim rests on a misreading of the court's instructions. The court, in the portion of the instructions cited by McElroy, was simply explaining that the intervening causes raised as defenses by Firestone had to be "sole legal causes" of the accident. The court had already carefully and correctly instructed the jury on the concept of "legal cause," stating explicitly that "[i]n order to be regarded as a legal cause of loss, injury or damage, negligence need not be its only cause," and that "a defective condition is a legal cause of injury if it directly and in natural and continuous sequence produces or *contributes substantially* to producing such injury." (Emphasis added.)

Finally, McElroy contends that the court improperly confused the jury by mentioning the side ring as well as the lock ring with regard to Firestone's sole-cause defense, and by instructing the jury, without further explanation, that McElroy had no allowable claims regarding the lock or side rings.[10] As to the first point, McElroy's counsel questioned one trial witness

---

10. For the first time on appeal, McElroy also suggests error in the court's failure to instruct the jury on comparative fault, and takes the novel approach of criticizing Firestone for not requesting such instructions. Needless to say, each party is responsible for requesting whatever jury instructions it may deem appropriate, and failure to so request, or to object to an instruction deemed inappropriate, precludes "assign[ing] as error the giving or the failure to give an instruction." Fed.R.Civ.P. 51.

at length about possible interactions between the side ring and the lock ring. When this issue came up during discussion of the jury instructions with the district court, Firestone's counsel pointed out the need to mention the side ring in view of that line of questioning, and McElroy's counsel stated: "I see the point. It's all right." McElroy thereby waived any claim on this point. *See* Fed.R.Civ.P. 51. As to the second point, McElroy argues, contradictorily, both that the district court went too far, in "unfairly commenting" on the fact that McElroy had no remaining claims as to the side or lock rings, and that the district court didn't go far enough, in "failing to explain" why those claims were disallowed. In fact, the court said what needed to be said and no more: that McElroy had no claims regarding the side or lock rings, but that Firestone was entitled to raise their condition as an affirmative defense. McElroy's counsel conceded before the district court that "[t]here probably ought to be no argument as to why the five degree lock ring design is not in the case." These claims lack merit.

### C. *The Distraught Juror Incident*

At about 5:00 p.m. on May 5, 1987, the second day of deliberations, as the deputy clerk was excusing the jury for the day, the clerk observed one juror crying and expressing a desire to be with her family.[11] The district judge had left for the day, leaving instructions for the clerk to excuse the jury for the day at 5:00. The clerk called the attorneys for both sides to the courtroom and described the situation to them. After an unsuccessful attempt to reach the judge by telephone, the clerk, without objection from either side, went ahead and excused the jury.[12] The next morning, after deliberating for forty minutes, the jury announced that it had a verdict. Before receiving the verdict, the judge conferred with counsel for both sides about the incident. She stated:

I don't feel that there is a problem, but I wanted to make sure before the jury comes back with a verdict that if you feel in retrospect that something could or should have been done differently, or you feel there's something should be done now I want to know that.

McElroy's counsel responded: "We feel that the court handled it exactly the way it should have been handled and gave the proper instruction to the jury and we have no objection about that at all." A few moments later, McElroy's counsel inquired about the court's policy with regard to speaking with the jurors afterward. The court responded that a local rule generally prohibited such contact, that a motion to the court was required to obtain permission for such contact, and that permission was very seldom granted.

McElroy raises two claims regarding this incident. First, he contends that the district judge "abandon[ed] the jury during deliberations and fail[ed] to communicate with the jury upon request." We find this characterization of events strained at best. There is no evidence that the judge would, should, or could have done anything differently from the clerk, had she been available that afternoon, nor is there any evidence that the jury wished to communicate anything in particular to the judge. McElroy now argues that "the evident personal problem of [the distraught juror] prevented fair and thoughtful deliberation causing the jury to rush to a verdict," and appears to suggest that a mistrial should have been declared. We see no reason to suspect that the jury "rushed" to a verdict under the circumstances of this case, especially where the jury had already been deliberating for two days prior to the incident. In any event, as the remarks quoted above clearly demonstrate, McElroy's counsel waived any objection on this point. *Cf. Zinnamon Associates v. Swafford,* 488 F.2d 863, 864 (5th Cir.), *cert. denied,* 417 U.S. 968, 94 S.Ct. 3172, 41 L.Ed.2d 1139

---

**11.** This juror was apparently pregnant and the mother of three young children, and lived 100 miles from the location of the trial. She had expressed concern at voir dire over whether she should serve; McElroy, however, declined to challenge her for cause or to exercise an available peremptory challenge.

**12.** McElroy's counsel declined an offer from the clerk to view the jurors as they left for the day.

(1974) (claim on appeal regarding judge's temporary absence from bench trial waived where no objection was made at trial).

■ Second, McElroy challenges the court's denial of his post-verdict motion to interview the jurors. We review the district court's disposition of this motion only for abuse of discretion. *See United States v. Barshov*, 733 F.2d 842, 851 (11th Cir. 1984), *cert. denied*, 469 U.S. 1158, 105 S.Ct. 904, 83 L.Ed.2d 919 (1985). We find no such abuse here. As the district court correctly noted in its order denying McElroy's motion, the inquiry evidently contemplated by McElroy would not be consistent with Federal Rule of Evidence 606(b), which provides that

> a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict.... Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

McElroy does not allege that any prejudicial information or outside influence was brought to bear on the jury; his allegations regarding this incident concern only the emotional state of mind of the distraught juror herself and the possible effect of her state of mind on that of the other jurors. For these reasons, McElroy's claim on this point lacks merit. *See Tanner v. United States*, 483 U.S. 107, 120–22, 107 S.Ct. 2739, 2747–49, 97 L.Ed.2d 90 (1987); *United States v. Badolato*, 710 F.2d 1509, 1515 (11th Cir.1983).

### III. CONCLUSION

The district court did not err in granting partial summary judgment for Firestone on the basis of Florida's statute of repose, nor did it commit any reversible error during trial. The judgment below is therefore AFFIRMED in all respects.