584 So.2d 1057 (1991)
Jack JONES, Appellant,
v.
DIRECTORS GUILD OF AMERICA, INC., a California corporation; Lee H. Katzin Productions, F/S/O Lee Katzin; and Claude Binyon, Jr., Appellees.
No. 90-1706.
District Court of Appeal of Florida, First District.
July 30, 1991.
Thomas M. Ervin, Jr., and Robert M. Ervin, Jr., of Ervin, Varn, Jacobs, Odom & Ervin, Tallahassee, for appellant.
Thomas K. Sciarrino, Jr., of Kass, Hodges and Massari, Tampa, for appellees.
ZEHMER, Judge.
This is a quiet title action in which Jack Jones seeks to determine whether California arbitration awards and the judgments entered thereon constitute valid liens on certain real estate Jones owns in Levy County by virtue of their having been filed and recorded there under the Florida Enforcement of Foreign Judgments Act, §§ 55.501-55.509, Florida Statutes (1989). He appeals a final order denying his motion for summary judgment and granting appellees' motion for summary judgment. Because the record reflects that there are disputed issues of material fact in respect to California's exercise of personal jurisdiction over Jones, and more particularly, *1058 whether Jones guaranteed certain obligations due and owed by others in California, we reverse and remand for a full evidentiary hearing.
The facts material to the issues on appeal are revealed by the affidavits and attached documents. No depositions or other testimony were filed in support of the motions for summary judgment.
Appellee Director's Guild of America (DGA) is a labor organization and collective bargaining representative for directors, unit production managers, and assistant directors in the motion picture and television industry. Premru Productions, Inc. (Premru), is a production company that, as a signatory to a collective bargaining agreement with DGA, employed appellees Lee Katzin and Claude Binyon, members of DGA, to work in connection with its production of a motion picture entitled "Deathwork." Jack Jones was the executive producer of Deathwork. During October 1984, the expected financing for Deathwork did not materialize, and Premru failed to pay Katzin and Binyon the compensation it owed them under the collective bargaining agreement. The collective bargaining agreement apparently contained an arbitration agreement covering grievances arising out of members' employment, and DGA submitted grievance and arbitration claims on behalf of Katzin and Binyon against Premru. For reasons explained below, Jones was later added as a defendant in the arbitration proceedings. Neither Premru nor Jones appeared, personally or through counsel, at the arbitration hearings. Whether Jones was ever served with process in the arbitration proceeding is in dispute. The arbitration resulted in an award of $55,000 to Katzin and an award of $36,251 to Binyon. Premru and Jones failed to pay the arbitration awards, and DGA filed petitions to confirm the awards in a California court. The California court entered judgments against Premru and Jones confirming both awards. In April 1986, DGA recorded the Binyon and Katzin judgments in the public records of Levy County, Florida, pursuant to the Florida Enforcement of Foreign Judgments Act.
In February 1989, Jack Jones filed the instant complaint in the circuit court to quiet title to property he owns in Levy County, alleging that the Katzin and Binyon judgments had cast a cloud on his title to this property. He alleged that the California court did not have personal jurisdiction over him and thus wrongfully entered the Binyon and Katzin judgments against him, and that the lack of personal jurisdiction in California rendered the judgments void and their recordation in the Levy County public records wrongful.
Jones subsequently filed a motion for summary judgment, and stated in his supporting affidavit that he has never been a resident of California; that he does not own any real or personal property in California; that he has never maintained any business office in California; that he has no employees in California; that he is not a stockholder, director, officer, agent, or principal of any California corporation; that he has never transacted any business in California; that he has never authorized any person, firm, or corporation to do business in his name in California; that he was never a signatory to any contracts or agreements with DGA, Katzin, or Binyon providing for arbitration or otherwise; that he was never personally served with process concerning any arbitration proceedings; that he never consented to jurisdiction of the California court; and that Premru had no authority to represent him in any capacity or to sign any contracts or agreements on his behalf that would subject him to liability in favor of DGA, Katzin, or Binyon.
DGA, Katzin, and Binyon also filed a motion for summary judgment. In support thereof, and in opposition to Jones's motion, they filed an affidavit of Beverly Ware, attorney for DGA, Katzin, and Binyon. The affidavit stated that in December 1984, Ware had a telephone conversation with a person at Premru's offices who identified himself as Jack Jones and requested that DGA not proceed any further with the Katzin arbitration so that DGA members could continue to work on Deathwork. She agreed to postpone the arbitration proceedings in exchange for Jones's *1059 agreement to guarantee payment of $55,000 to Katzin. She confirmed that conversation by letter to Jones, and received a responsive letter from Jones confirming the conversation and stating that he would serve as a guarantor. In January 1985 she informed Premru that DGA would proceed with the Katzin arbitration unless DGA received guaranties from persons of sufficient financial standing guaranteeing payment to Binyon of $36,251. Thereafter, she received a letter from Jones guaranteeing payment of that sum to Binyon. In March 1985, when neither Katzin nor Binyon had been paid, she mailed notices to Jones that she would be seeking arbitration awards for Katzin and Binyon and that Jones would be added as a party. Jones confirmed his receipt of these notices by telephone. Thereafter, Ware mailed copies of the arbitration claims, notices of hearings, and awards to Jones at his Cedar Key address, and Frances Nesbitt, Jones's assistant, signed the return receipts for some of these documents. Ware also mailed the petitions, notices of hearing, and judgments confirming the arbitration awards to Jones at his Cedar Key address; return receipts for these documents were signed by either Nesbitt or Jones. In April 1986, DGA filed certified copies of the Katzin and Binyon judgments in the Levy County public records and the clerk of the Levy County court mailed a notice of recording final judgments to Jones at his Cedar Key address.
Jones timely filed an affidavit in opposition to appellees' motion for summary judgment stating that he had no recollection of any telephone conversation with anyone concerning his guaranteeing payment to Katzin, that he never authored any letters guaranteeing such payment, and that he never authorized anyone else to write such letters. He stated that any letters representating that he would serve as guarantor were forgeries.
The trial court, upon consideration of the above motions, affidavits, and documents attached thereto, denied Jones's motion and entered summary final judgment in favor of appellees DGA, Katzin, and Binyon.
Jones argues on appeal that the court erred in denying his motion for summary judgment made on the ground that the California court lacked personal jurisdiction over him. Jones contends that "undisputed" statements in his affidavit established a complete absence of any contact by him with California. Appellees argue that Jones's affidavit with regard to this issue is far from undisputed in that Beverly Ware averred in her affidavit that she received telephone calls and letters in California from Jones, who was the executive producer of Deathwork, wherein Jones agreed to guarantee payment to Katzin and Binyon in exchange for her agreement to postpone the arbitration proceedings.
The affidavits of Jones and Ware directly contradict each other on the material facts pertaining to personal jurisdiction. When acting upon a motion for summary judgment, if the record raises the slightest doubt that material issues could be present, that doubt must be resolved against the movant and the motion for summary judgment must be denied. Braidi Trading Company v. Anthony R. Abraham Enterprises, Inc., 469 So.2d 955 (Fla. 3d DCA 1985); Booth v. Mary Carter Paint Company, 182 So.2d 292 (Fla. 2d DCA 1966). We recognize that merely agreeing by telephone and letter to guarantee payment of amounts owed by Premru to Katzin and Binyon in California, and subsequently failing to pay such debts would not, in and of itself, satisfy the sufficient minimum contacts[1] required for the California court to acquire personal jurisdiction *1060 over Jones. Venetian Salami Co. v. Parthenais, 554 So.2d 499 (Fla. 1989); Edwards v. Geosource, Inc., 473 So.2d 36 (Fla. 1st DCA 1985). However, in this case, Ware's affidavit contains additional facts that may or may not satisfy the minimum contacts requirement. For example, Ware's affidavit asserts that Jones was the executive producer of Deathwork, but does not allege what this position entailed, whether and to what extent Jones was connected to Premru, and whether the production of Deathwork was taking place in California. Whether these facts can be found sufficient to demonstrate the required minimum contacts essential to the validity of the California court's exercise of personal jurisdiction will depend upon the proof adduced at the evidentiary hearing; on this record we cannot say that such facts are sufficient, in conjunction with Jones's guarantee agreement, to subject Jones to suit in California. For this reason, Jones did not carry his burden on motion for summary judgment, and the trial court did not err in denying Jones's motion for summary judgment.
Jones next argues that the trial court erred in granting summary final judgment for appellees. We agree. As demonstrated above, the facts material to the jurisdictional issue are in dispute, so the trial court should not have entered summary final judgment based on the validity of the California judgments in favor of either party.[2] When facts bearing on a jurisdictional issue are in dispute, the trial court may determine the factual issues in a full evidentiary proceeding, with the right of confrontation and cross-examination, either before trial on application of any party or during trial in the discretion of the court. Rule 1.140(d), Fla.R.Civ.P. The thrust of Jones's attack on the validity of the California judgments is two-fold. First, he contends the California arbitration panel and court never obtained jurisdiction over his person for lack of minimum contacts and lack of personal service. Second, he asserts that the written guarantee relied on by appellees was a forgery and could not support either California's exercise of jurisdiction or the underlying judgments because that issue, which sounds in fraud, has never been litigated.[3] These disputed issues of fact can only be resolved in a full evidentiary hearing.
One final argument by appellees needs to be addressed. They contend that when the California judgments were recorded in the Levy County public records Jones did not attack the validity of the foreign judgments within 30 days as required, they argue, by section 55.509, Florida Statutes (1989). This argument is completely without merit. We agree entirely with the following analysis of that act set forth in appellant's reply brief:
Section 55.505(2) of the Act provides that the clerk of the circuit court shall mail to the judgment debtor notice that a foreign judgment has been recorded. Section 55.505(3) of the Act provides that no execution or other process for enforcement of a foreign judgment shall issue until thirty days after the mailing of the notice. Section 55.507 of the Act provides that the foreign judgment shall not operate as a lien until thirty days after the mailing of the notice. Section 55.509 provides that if the judgment debtor collaterally attacks the foreign judgment within thirty days of the recording of the foreign judgment, the court shall stay enforcement of the foreign judgment and the judgment lien upon the filing of the action. See Fla. Stat. §§ 55.505(3), .507 (1987).
The Act does not provide that a collateral attack must occur within thirty days or be forever barred. The Act simply provides that a collateral attack begun within thirty days shall stay enforcement of the foreign judgment and the *1061 judgment lien. If a collateral attack is not begun within thirty days, the judgment creditor may proceed to enforce the foreign judgment and the foreign judgment will operate as a lien.
The judgment debtor is not thereafter precluded from collaterally attacking the foreign judgment. As provided by section 55.503(1) of the Act:
A judgment so recorded shall have the same effect and shall be subject to the same rules of civil procedure, legal and equitable defenses, and proceedings for reopening, vacating, or staying judgments, and it may be enforced, released, or satisfied, as a judgment of a circuit or county court of the state.
Thus, although Jones, by filing his suit to quiet title, may not receive the benefit of a stay of enforcement of the California judgments or the judgment liens, he is not precluded from collaterally attacking the California judgments through a suit to quiet title.
We reverse the summary final judgment entered for appellees and remand for a full evidentiary hearing on the disputed material issues raised in this case. At the very least, the trial court must determine whether Jones was personally served with process with regard to the California arbitration proceedings and court proceedings, whether Jones had a telephone conversation with Beverly Ware wherein he promised to guarantee the debts owed by Premru to Katzin and Binyon, whether Jones signed the letters that purported to guarantee payment of such debts to Katzin and Binyon, whether and to what extent Jones was connected to Premru, and what Jones's status as executive producer entailed with respect to events that took place in California.[4]
The order denying appellant's motion for summary judgment is AFFIRMED. The summary final judgment for appellees is REVERSED and this cause is REMANDED for further proceedings consistent with this opinion.
NIMMONS and MINER, JJ., concur.
NOTES
[1] The question of whether a defendant can be subjected to an in personam judgment when he is not present within the state depends upon whether the defendant has certain minimum contacts with that state such that the maintenance of the suit within that state does not offend traditional notions of fair play and substantial justice. International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The test is whether the defendant's conduct in connection with the forum state is "such that he could reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).
[2] There is no question that the jurisdictional issue alleged in Jones's amended complaint may be raised in this suit to quiet title because the recorded judgments seemingly create liens on Jones's property.
[3] The courts of Florida are not required to recognize a judgment or decree of a foreign court obtained by fraud. 33 Fla.Jur. Judgments and Decrees § 298 (1982).
[4] Appellees contend only that Jones agreed to pay certain sums owed by Premru to Katzin and Binyon. They do not contend, nor does the Ware affidavit allege, that Jones agreed to guarantee Premru's performance of the collective bargaining agreements under which Katzin and Binyon claimed the right to arbitration. Absent proof of such an agreement, it seems highly questionable that Jones could, under the facts alleged, be bound by arbitration conducted pursuant to those agreements.