617 So.2d 770 (1993)
Gerald D. HENDERSON, Sr., Appellant,
v.
CSX TRANSPORTATION, INC., a corporation, Appellee.
No. 92-2338.
District Court of Appeal of Florida, First District.
April 27, 1993.
Rehearing Denied May 27, 1993.
R.J. Beckham and Gary F. Easom of Beckham & McAliley, P.A., Jacksonville, for appellant.
*771 Peter J. Kellogg, Ronald R. Oberdier and Homer H. Humphries, Jr., of Humphries, Kellogg & Oberdier, P.A., Jacksonville, for appellee.
WEBSTER, Judge.
Appellant (Henderson), plaintiff in the trial court, seeks review of an adverse summary final judgment entered in an action brought pursuant to the Federal Employers' Liability Act (FELA). 45 U.S.C. §§ 51-60. We reverse.
In his amended complaint, Henderson alleged that, at all relevant times, appellee (CSX) "owned and operated a common carrier railroad engaged in interstate commerce"; and that Henderson was an employee of CSX, "working in the scope of his employment and in furtherance of interstate commerce." According to the amended complaint, Henderson was injured "when, contrary to the established custom and practice of [CSX's] workplace, an employee of [CSX] (while in the line of duty) placed torpedos [sic] [small devices placed on a rail, which are designed to explode when the wheel of a railroad car or locomotive passes over them, to warn employees] between the chock [a blocking device] and wheel of a railroad car, and when [Henderson] attempted to remove the chock, the car moved and torpedo exploded." Henderson alleged that CSX was negligent because it "fail[ed] to exercise reasonable care to provide [him] with a reasonably safe place to work"; and because it "fail[ed] to warn [him] that a torpedo had been placed near the wheel of a car [he] was required to move." CSX's answer generally denied the material allegations of the amended complaint; and asserted several affirmative defenses, none of which is relevant for purposes of this appeal.
CSX subsequently filed a motion for summary judgment. The sole ground asserted in support of the motion was that, at his deposition, Henderson had conceded that he was unaware of any direct evidence which would support his contention that an employee of CSX had placed the torpedo on the rail. In addition to the amended complaint and the answer, the trial court had before it when it considered the motion for summary judgment Henderson's deposition, to which were attached various documents, including a report submitted by Henderson to CSX shortly after the accident and a statement taken from Henderson by CSX approximately one year after the accident; and the affidavit of John D. Ganon, filed by Henderson.
At the time of the accident, Henderson had been employed by CSX or its predecessors for nearly twenty-two years. Since the accident, Henderson has consistently said that his injury was caused by an exploding torpedo. Henderson did not see the torpedo. (The accident occurred at approximately 1:30 a.m.) However, based upon his twenty-two years of experience as a trainman, he testified that he was certain that the offending device had been a torpedo. At his deposition, Henderson testified that he did not know who had placed the torpedo on the track. However, he said that he believed that it had to have been someone employed by CSX, because only employees would have access to torpedoes.
In opposition to the motion for summary judgment, Henderson filed the affidavit of John D. Ganon. Ganon, like Henderson, had been employed by CSX for more than twenty years. His affidavit states that torpedoes such as those mentioned in Henderson's complaint are routinely stored by CSX on engines and cabooses, for use by employees; that operating rules of CSX specify that not less than six torpedoes be available in each engine cab and in the last car of each train, and that not less than twelve torpedoes be available in each occupied caboose; that safety rules of CSX require that torpedoes be carefully stored, so that they cannot be obtained by unauthorized persons, because CSX considers torpedoes to be "extremely dangerous instruments"; that CSX "has stressed the utmost in accountability of" torpedoes; and that, in his more than twenty years as an employee of CSX, he has "never known [of] an unauthorized person gaining access to any torpedoes."
CSX offered no evidence to contradict either Henderson's version of events or Ganon's affidavit. Instead, it argued that, because Henderson had no direct evidence *772 that one of its employees had placed the torpedo on the track, it was entitled to a summary judgment. Without explanation, the trial court granted CSX's motion, and entered a summary final judgment. It is from that summary final judgment that Henderson appeals.
FELA actions tried in state courts are generally subject to the forum state's procedural rules. However, the controlling substantive law is federal. St. Louis Sw. Ry. v. Dickerson, 470 U.S. 409, 105 S.Ct. 1347, 84 L.Ed.2d 303 (1985). It has long been recognized that common law tort principles have little to do with the statutorily created FELA action. E.g., Nelson v. Seaboard Coast Line R.R., 398 So.2d 980 (Fla. 1st DCA), review denied, 411 So.2d 383 (Fla. 1981); Gaymon v. Quinn Menhaden Fisheries of Texas, Inc., 118 So.2d 42 (Fla. 1st DCA 1960).
The controlling case on the quantum of evidence which must be presented in an FELA action to create a jury question is Rogers v. Missouri Pacific Railroad Co., 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957). In light of the trial court's decision in this case, we believe it appropriate, once again, to quote at some length from that decision:
Under this statute [FELA] the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes... . Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death. Judges are to fix their sights primarily to make that appraisal and, if that test is met, are bound to find that a case for the jury is made out whether or not the evidence allows the jury a choice of other possibilities... .
The law was enacted because the Congress was dissatisfied with the common-law duty of the master to his servant. The statute supplants that duty with the far more drastic duty of paying damages for injury or death at work due in whole or in part to the employer's negligence. The employer is stripped of his common-law defenses and for practical purposes the inquiry in these cases today rarely presents more than the single question whether negligence of the employer played any part, however small, in the injury or death... . The burden of the employee is met, and the obligation of the employer to pay damages arises, when there is proof, even though entirely circumstantial, from which the jury may with reason make that inference.
The Congress when adopting the law was particularly concerned that the issues whether there was employer fault and whether that fault played any part in the injury or death of the employee should be decided by the jury whenever fair-minded men could reach these conclusions on the evidence... .
... .
The kind of misconception evidenced in the opinion below, which fails to take into account the special features of this statutory negligence action that make it significantly different from the ordinary common-law negligence action, has required this Court to review a number of cases. In a relatively large percentage of the cases reviewed, the Court has found that lower courts have not given proper scope to this integral part of the congressional scheme... . The decisions of this Court after the 1939 amendments teach that the Congress vested the power of decision in these actions exclusively in the jury in all but the infrequent cases where fair-minded jurors cannot honestly differ whether fault of the employer played any part in the employee's injury. Special and important reasons for the grant of certiorari in these cases are certainly present when lower federal and state courts persistently deprive litigants of their right to a jury determination.
352 U.S. at 506-10 (footnotes omitted).
Some two years after Rogers, the Supreme Court made it clear that it had *773 meant what it had said. In Conner v. Butler, 109 So.2d 183 (Fla.3d DCA), cert. denied, 113 So.2d 835 (Fla. 1959), the Third District Court of Appeal affirmed a directed verdict in favor of the defendant entered by the trial court in an FELA action. Citing at length from Rogers, the court concluded that, in the absence of proof as to how or why the accident had occurred, Rogers did not require that the case be permitted to go to the jury. The Supreme Court granted certiorari and summarily reversed, citing Rogers, and stating: "We hold that the proofs were sufficient to submit to the jury the question whether employer negligence played a part in producing the petitioner's injury." Conner v. Butler, 361 U.S. 29, 80 S.Ct. 21, 4 L.Ed.2d 10 (1959).
Whether the evidence before the trial court was sufficient to meet the substantive requirements set out in Rogers must be evaluated according to Florida procedural law regarding summary judgments. That law is, likewise, well-established:
The law is well settled in Florida that a party moving for summary judgment must show conclusively the absence of any genuine issue of material fact and the court must draw every possible inference in favor of the party against whom a summary judgment is sought... . A summary judgment should not be granted unless the facts are so crystallized that nothing remains but questions of law... .
If the evidence raises any issue of material fact, if it is conflicting, if it will permit different reasonable inferences, or if it tends to prove the issues, it should be submitted to the jury as a question of fact to be determined by it.
Moore v. Morris, 475 So.2d 666, 668 (Fla. 1985). Succinctly put, "[w]hen acting upon a motion for summary judgment, if the record raises the slightest doubt that material issues could be present, that doubt must be resolved against the movant and the motion for summary judgment must be denied." Jones v. Directors Guild of America, Inc., 584 So.2d 1057, 1059 (Fla. 1st DCA 1991).
In the present case, there is no direct evidence in the record that the torpedo was placed on the track by an employee of CSX. However, we believe that there is circumstantial evidence which would support an inference that the torpedo was placed on the track by an employee of CSX. Henderson testified that only employees of CSX would have access to torpedoes. That testimony was corroborated by Ganon's affidavit. Moreover, Henderson's testimony suggests that the torpedo had been placed on the track in a manner consistent with its intended use. While a jury might draw a different inference from the facts, we cannot conclude that the facts would not permit a jury to draw the inference that the torpedo was placed on the track by an employee of CSX; and that, therefore, employer negligence played some part in producing Henderson's injury.
It was error to grant CSX's motion for summary judgment. Accordingly, we reverse and remand for further proceedings consistent with this opinion.
REVERSED and REMANDED, with directions.
WOLF and KAHN, JJ., concur.