660 So.2d 277 (1995)
James M. CASSOUTT and Cindy M. Cassoutt, Husband and Wife, and Judy L. Kealey, Appellants,
v.
CESSNA AIRCRAFT COMPANY, a Delaware Corporation, Appellee.
No. 93-2197.
District Court of Appeal of Florida, First District.
April 7, 1995.
Order Denying Rehearing September 18, 1995.
*278 Arthur Alan Wolk, Wolk & Genter, Philadelphia, PA, and Louis K. Rosenbloum, Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A., Pensacola, for appellants.
H. Edward Moore, Jr., Moore, Hill, Westmoreland, Hook & Bolton, Pensacola, and Mark A. Dombroff, Jonathan M. Stern and H. Eugene Rambo, Katten, Muchin, Zavis & Dombroff, Washington, DC, for appellee.
JOANOS, Judge.
This is an appeal from a summary final judgment entered in favor of appellee, Cessna Aircraft Company (Cessna), pursuant to the statute of repose, in appellants' action for damages for personal injuries sustained in the crash of a single engine airplane manufactured by Cessna. Appellants contend the summary final judgment was granted improperly, because: (1) material issues of fact existed as to the date of installation of components, (2) Cessna had a continuing involvement and Federal Aviation Administration (FAA) mandated duty to ensure the airworthiness of the aircraft, and (3) the trial court's application of the statute of repose conflicts with federal law. We affirm.
A brief recitation of the underlying facts and the posture of this case is in order. On August 14, 1989, appellants suffered serious personal injuries in the crash of a Cessna A185E single engine aircraft. On June 27, 1991, appellants filed their initial complaint against Cessna and Robert Gill, the mechanic who performed the last annual inspection of the airplane prior to the crash. In an amended complaint, appellants sought recovery against Cessna on theories of strict liability in tort and negligence. The claim against Robert Gill, also grounded on negligence, was voluntarily dismissed in June 1993. Among other things, the amended complaint alleged that the accident was due to "the defective, dangerous, and negligent design and manufacture of the aircraft, including ... the defective and dangerous design of the locking mechanism for the front seat." The accident allegedly occurred as James Cassoutt, who was piloting the aircraft,
attempted a go-around maneuver designed to takeoff and reposition the aircraft for landing.
27. As the go-around maneuver was commenced, the pilot seat suddenly slid rearward while the plaintiff grasped the control yoke causing the nose of the aircraft to suddenly pitch up resulting in an aerodynamic stall and crash.
*279 The strict liability count of the complaint alleged, among other things, that "[t]he seat locking mechanism was defectively designed because it lacked more than one locking pin, was equipped with aluminum seat rails working against steel locking pins, was of sloppy design and construction to allow for excessive seat movement, and failed to have a secondary seat stop." The seat-locking mechanism was addressed in the negligence count of the complaint, with allegations that Cessna failed to recognize and correct a life-threatening defect in the seat locking systems of the aircraft, failed to implement necessary safety changes to prevent or lessen seat slips, and failed to offer a secondary latch pin or seat stop to correct the cause of seat slippage.
The record contains Service Bulletins issued by Cessna, providing new service information concerning single engine Cessna aircraft. Many of these Service Bulletins relate to correction of the aft travel of the pilot seat for single engine Cessna airplanes. In 1987, the FAA issued Airworthiness Directive 87-20-03, applicable to Cessna airplanes. This directive required mechanics to check the seat locking mechanism of each pilot and copilot seat and all associated seat rails.
The accident aircraft was delivered to its original purchaser on August 6, 1966. In 1988, Robert Gill, an FAA-authorized mechanic, inspected the accident aircraft for the current owner, James Carlton. Pursuant to that inspection, Gill entered the following information in the airplane logbook: "11/20/88 ... Replaced: Both Left Front Seat Rails." Mr. Gill performed the annual inspection on the same date, and certified that the airplane was in an airworthy condition at that time.
On April 14, 1989, Cessna issued Single Engine Service Bulletin (SEB) 89-2, which offered a secondary seat stop 
designed to assist in providing an additional margin of safety by limiting the aft travel of the seat in the event that the primary latch pin is not properly engaged in the seat rail track. Seat slippage could result in the pilot not being able to reach all the controls and subsequently losing control of the airplane.
In 1989, compliance with the service bulletin was recommended. However, on September 4, 1992, Cessna issued SEB 89-2, making installation of the secondary seat stop on the pilot seat mandatory.
Under FAA requirements, each aircraft must have an airframe logbook in which the maintenance work performed on that aircraft is recorded. William L. Kelly, airframe mechanic and engineering test pilot, stated in his affidavit that Mr. Gill's November 20, 1988, logbook entry for the accident aircraft was in accordance with FAA Airworthiness Directive 87-20-03.[1] In the affidavit, Mr. Kelly explained that the "accident aircraft was of a single latch pin seat design, which means that only the left rail on both the pilot and co-pilot seat acted to engage a pin to prevent the seat from moving."
Appellant James Cassoutt bought the accident airplane in March 1989. Mr. Cassoutt testified that the left front seat rails were new when he purchased the airplane. He stated he arrived at that conclusion based upon his examination of the logbook, observation of the seat rails, and discussions with the owner of the airplane and the mechanic at the airport where the plane was housed.
In an affidavit dated November 19, 1992, Mr. Gill averred that he installed new seat rails in the accident aircraft "some time during the first week of September, 1988." The affidavit further states that the logbook entry was erroneous insofar as it stated that he replaced "both left front seat rails." The Gill affidavit then stated that the logbook entry should read "replaced both right front seat rails" or "replaced right seat rails on both front seats."
On November 23, 1992, Cessna filed a motion for summary judgment predicated upon section 95.031(2), Florida Statutes, which required that actions for product liability must be brought within twelve years after the date of delivery of the completed product to its original purchaser. The 1992 Gill affidavit *280 was attached to the motion for summary judgment.
In a second affidavit dated May 20, 1993, Mr. Gill averred in part:
3. Following the crash of that aircraft [Cessna 185E, S/N 185-1094, FAA Registration No. N95KW], I was visited on a number of occasions by investigators in behalf of Cessna Aircraft Company.
4. Sometime in November, 1992, I was told by an investigator from Cessna that his review of the records of Yingling Aircraft, Inc. revealed my purchase of some seat rails for a Cessna 185 aircraft which belonged to Mr. Carlton.
5. Based on that representation and an examination of that invoice, and since I did not have any of my own copies of the invoices to check against for the year 1988, I took an affidavit which was attached to Cessna's motion for summary judgment where I said, "During the course of my inspection of the front seat rails in accordance with Airworthiness Directive 87-20-03, I discovered several small cracks in the right hand rails on both front seats, which I elected to replace although, according to the A.D., the cracks were located such that the rails were acceptable for continued use. The right hand rails on both front seats in this aircraft are the rails without the holes for the seat locking pins."
6. I have reviewed the part number of the rails which were in the Yingling Aircraft, Inc. invoice and compared it with pages of the Cessna Illustrated Parts Manual for the Cessna 185 aircraft. It is clear from a review of those documents that the rails which are in the Yingling invoice could not be for a Cessna 185 aircraft. It appears that what I was told by Cessna Aircraft Company is incorrect.
7. In that the information I was supplied by Cessna appears to be incorrect, my affidavit based upon that information prepared by Cessna's lawyers, is also incorrect.
On May 21, 1993, Mr. Gill gave a third affidavit which, in effect, contradicted the averments and inferences to be drawn from the second affidavit. In the third affidavit, Mr. Gill stated that he remained certain, through his own recollection, that he replaced the right seat rails in the accident aircraft, rather than the left seat rails. The third affidavit further stated: "I do not feel I was misled or deceived by representatives from Cessna."[2] On June 16, 1993, the trial court issued the summary final judgment here appealed.
A party seeking summary judgment in a negligence action has a more onerous burden than that borne in other types of cases. Wills v. Sears, Roebuck & Co., 351 So.2d 29, 30 (Fla. 1977); Stanford v. CSX Transportation, Inc., 637 So.2d 37, 39 (Fla. 2d DCA), review denied, 645 So.2d 451 (Fla. 1994). When ruling upon a motion for summary judgment, the trial court must draw all reasonable inferences in favor of the nonmoving party. Board of Trustees v. Caudill Rowlett Scott, Inc., 461 So.2d 239, 243 (Fla. 1st DCA 1984), review denied, 472 So.2d 1180 (Fla. 1985). "[I]f the record raises the slightest doubt that material issues could be present, that doubt must be resolved against the movant and the motion for summary judgment must be denied." Henderson v. CSX Transportation, Inc., 617 So.2d 770, 773 (Fla. 1st DCA 1993), quoting Jones v. Directors Guild of America, Inc., 584 So.2d 1057, 1059 (Fla. 1st DCA 1991). See also Moore v. Morris, 475 So.2d 666, 668 (Fla. 1985).
When summary judgment is sought on the basis of a statute of limitations, after the moving party tenders competent evidence to support the motion, "the opposing party must come forward with counter-evidence sufficient to reveal a genuine issue." Landers v. Milton, 370 So.2d 368, 370 (Fla. 1979). That is, "the party seeking to escape the statute of limitations must bear the burden of proving circumstances that would toll the statute." Id.
*281 The question for our resolution is whether there is record support for the trial court's determination that appellants' claim against Cessna was extinguished in its entirety by the statute of repose formerly applicable to products liability actions. The preamended statute of repose, section 95.031(2), Florida Statutes, states:
(2) Actions for products liability and fraud under s. 95.11(3) must be begun within the period prescribed in this chapter, with the period running from the time the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence, instead of running from any date prescribed elsewhere in s. 95.11(3), but in any event within 12 years after the date of delivery of the completed product to its original purchaser or within 12 years after the date of the commission of the alleged fraud, regardless of the date the defect in the product or the fraud was or should have been discovered.
In 1986, the legislature amended the statute to abolish the twelve-year period of repose for product liability actions. Ch. 86-272, § 2, Laws of Fla. The Florida Supreme Court then held that immunity from suit cannot be withdrawn retroactively by subsequent legislation. Melendez v. Dreis & Krump Manufacturing Co., 515 So.2d 735, 736 (Fla. 1987). In other words, if the statute of repose expires prior to an injury allegedly resulting from the defective design or manufacture of a product, the subsequent repeal of the statute of repose does not have the effect of reinstating a cause of action that previously had been extinguished by operation of law. Firestone Tire & Rubber Co. v. Acosta, 612 So.2d 1361, 1363 (Fla. 1992).
In the instant case, it is undisputed that: (1) the accident aircraft was delivered to the original purchaser in 1966; (2) the twelve-year statute of repose lapsed in 1978; (3) the statute of repose was repealed effective July 1, 1986; (4) new seat rails were installed in the airplane in 1988; (5) the left seat rails are designed with a locking mechanism that affects the backward and forward movement of the seats; (6) the aft movement of the pilot's seat in Cessna single engine airplanes has been the continuing subject of Cessna service bulletins and FAA Airworthiness Directives; and (7) the subject accident and injuries occurred August 14, 1989, twenty-three years after delivery of the airplane to its original purchaser.
The record in this case reflects that Cessna met its initial burden by demonstrating on the face of the pleadings that the action was time barred. Appellants responded with evidence which raises a factual issue only with respect to the front seat rails which were replaced in 1988. This counter-evidence raises questions whether the left or the right front seat rails were replaced.[3] Nevertheless, that is irrelevant, as the pleadings alleged a defective aircraft. Appellants' pleadings did not allege that the seat rail was a separate "completed product," in and of itself.[4] Consequently, we are unable to reach the question whether installation of the new component gave rise to a separate cause of action against Cessna with respect to that component. Since the statute of repose bars the action alleged, we find it unnecessary to address further the other issues raised by appellants.
*282 Accordingly, the trial court's grant of summary final judgment in favor of Cessna is affirmed.
ERVIN and BARFIELD, JJ., concur.

ON MOTION FOR REHEARING
Appellants seek rehearing of this court's opinion issued April 7, 1995, in which we affirmed the trial court's grant of summary final judgment in favor of Cessna Aircraft Company. We grant the alternative relief sought in the motion for rehearing, and modify the prior opinion filed in this cause to reflect that our affirmance of the trial court's ruling is without prejudice to appellants' right to amend their complaint to allege that the seat rails are "completed products" for purposes of the statute of repose. In all other respects, the motion for rehearing is denied.
ERVIN, J., concurs.
BARFIELD, J., dissents.
NOTES
[1] The logbook entry dated November 20, 1988, indicates that both left front seat rails were replaced in 1988.
[2] At the hearing on Cessna's motion for summary judgment, appellants' counsel advised the trial court that Cessna representative told Mr. Gill that by his statement in an affidavit that he replaced the right seat rail, the left seat rail would be involved in the statute of repose. This would have the effect of absolving Cessna, and perhaps Gill, of any responsibility for the airplane crash.
[3] The difference is significant to the lawsuit, because only the left front seat rail and latch pin are implicated in the backward and forward movement of the pilot's seat.
[4] Our independent research has not disclosed, nor have the parties provided, a Florida appellate court decision addressing the question whether a replacement component can constitute a separate "completed product" capable of triggering a new limitations period in regard to that component. The Eleventh Circuit Court of Appeals implicitly decided the issue in McElroy v. Firestone Tire & Rubber Co., 894 F.2d 1504 (11th Cir.1990), when the court treated a rim base manufactured in January 1974, a side ring manufactured in June 1962, and a lock ring manufactured in May 1959, as separate components of a wheel assembly for purposes of the Florida statute of repose. In July 1981, McElroy was injured by an explosion of a tire mounted on the wheel assembly. The trial court granted Firestone's motion for summary judgment as to the lock ring and side ring, based on the Florida statute of repose; the appellate court affirmed the grant of partial summary judgment in Firestone's favor, implicitly ruling that the rim base manufactured in 1974 could be sued upon separately.